

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-11-2008

# Lin v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 06-2883

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Lin v. Atty Gen USA" (2008). *2008 Decisions.* Paper 447.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/447

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-2883
_____

BIN LIN,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A98-358-506)
Immigration Judge:  Honorable Mirlande Tadal

_____

Argued March 14, 2008

Before:  FUENTES, CHAGARES, and VAN ANTWERPEN,
<u>Circuit</u> <u>Judges</u>.

(Filed: September 11, 2008)

_____

Thomas V. Massucci (Argued)
401 Broadway, Suite 908
New York, NY 10013
<u>Counsel for Petitioner</u>

Edward J. Duffy (Argued)
Alison M. Igoe
Peter D. Keisler
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044-0878
Counsel for Respondent

_____

OPINION OF THE COURT
_____

CHAGARES, Circuit Judge.

Bin Lin (Bin) petitions for review of a final order of removal issued by the Board of Immigration Appeals (BIA). After unlawfully entering the country and being placed in removal proceedings, Bin applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). He grounded these claims on his alleged arrests and abuse in China for engaging in a spiritual-meditative practice called Falun Gong. Following a hearing, an Immigration Judge (IJ) denied Bin's claims for two reasons: first, that Bin's testimony in support of his claims was not credible, and second, that even if the testimony were credible, it failed to meet the burdens of proof necessary for the requested forms of relief. Bin then appealed to the BIA. The Government contends that Bin failed to contest the IJ's credibility determination in his appeal to the BIA, and that we are therefore without jurisdiction to consider Bin's petition to this Court.

We agree that Bin failed to raise the adverse credibility finding in his appeal to the BIA. We hold, however, that because the BIA nonetheless considered the adverse credibility determination, the issue was sufficiently exhausted to provide us with jurisdiction to review it. Exercising this jurisdiction, we find that substantial evidence supports the credibility determination, and accordingly, we will deny the petition for review.

2

I.

Bin is a 23-year-old native and citizen of the People's Republic of China. On October 1, 2004, Bin arrived in the United States through Mexico. When approached by Border Patrol agents, he stated that he entered the country to find work.[1] He was subsequently placed in removal proceedings, where he admitted the factual allegations against him and conceded his removability. Thereafter, Bin submitted his application for asylum, withholding of removal, and protection under the CAT.[2]

At a February 24, 2005 hearing before the IJ, Bin testified on his own behalf. He explained that he began practicing Falun Gong[3] in 1998, when he was in the fifth grade, because he suffered

---

[1] He later testified that his intention was to seek asylum and that he only responded initially as he did because he was "so tense." Administrative Record (A.R.) 83.

[2] As part of his application, Bin submitted a written affidavit concerning his reasons for seeking political asylum. The IJ based her credibility determination in large part on the perceived discrepancies between Bin's affidavit and his testimony at a hearing before the IJ.

[3] The State Department Report on China indicates that Falun Gong is a "spiritual movement . . . that blends aspects of Taoism, Buddhism, and the meditative techniques and physical exercises of qigong (a traditional Chinese exercise discipline) with the teachings of Falun Gong founder Li Hongzhi . . . . Many practitioners became interested in Falun Gong because of its purported health benefits." A.R. 130. The Chinese government, however, became concerned by its growing popularity in the 1990s and eventually labeled it a "cult." A.R. 130. In 1999, the Chinese government banned Falun Gong, and "[a] harsh crackdown against the so-called 'evil cult' followed." A.R. 130. "Since January 2002, the mere belief in Falun Gong, even without any public manifestation of its tenets, has been sufficient grounds for practitioners to receive punishments ranging from loss of employment to imprisonment." A.R. 130.

from inflammatory diseases of the stomach and intestine and that neither "Western trained" medical doctors nor "Chinese herbal doctors" were able to alleviate his symptoms. A.R. 75. As a result, Bin began to practice Falun Gong when his mother's friend convinced him that it would help his illnesses. No one else in his family practiced, so Bin bought some books and a video on Falun Gong. On direct examination, Bin testified that he practiced with other Falun Gong practitioners at a nearby park "once or twice," though the IJ found that Bin contradicted himself on cross-examination. A.R. 77.[4]

Bin claimed that he was arrested twice for practicing Falun Gong, first in August 1999 and again in January 2004. He testified that the first time, five or six police officers came to his house, took him by force, and did not give a reason for his arrest. According to Bin, the officers interrogated and beat him badly, but he could not recall the substance of their questioning. Bin stated that two days later, he was sent to a detention center in Qwan Do, China, where he was detained for more than two months. Bin testified that many other inmates were detained there because they also practiced Falun Gong. He stated that he was beaten by the authorities—hit and kicked in the leg and beaten with a club. Bin claimed that he was eventually released, two months later, after he signed a document stating that he would never practice Falun Gong again.

According to Bin, he was arrested again in January 2004 and accused of practicing Falun Gong. The authorities detained him for one month and did not allow his mother to visit him. He claimed that he was beaten once while detained, and that he suffered bruises. He alleged that his mother was also interrogated after his detention. He was released on January 15, 2004, and departed China in September 2004.

---

[4] To avoid repetition, we recount the contents of Bin's written affidavit and cross-examination, where applicable, in the discussion section of the opinion and omit them here.

4

On March 3, 2005, the IJ denied Bin's applications for asylum, withholding of removal, and CAT protection and ordered him removed. The IJ denied asylum for two distinct reasons. First, even assuming Bin's testimony was truthful, the evidence did not support a finding of past persecution or a well-founded fear of persecution as is required to prevail on an asylum claim. Second, the IJ found Bin not credible due to material inconsistencies within his testimony and between his testimony and his written affidavit. Specifically, the IJ determined that while Bin's affidavit stated that the police told Bin the reason for his first arrest, he testified before the IJ that the police gave no reason for the arrest. In addition, the IJ determined that Bin testified inconsistently about where, and with whom, he practiced Falun Gong after his first arrest. The IJ also found that Bin did not meet the more exacting standard for withholding of removal or the standard for relief under the CAT.

On March 7, 2005, Bin, through his prior counsel, filed a notice of appeal with the BIA. The notice of appeal did not assert which issues Bin was appealing but instead stated that he would file a separate brief. In the separate brief, Bin listed the following arguments:

I. THE IJ ERRED IN FINDING THAT [BIN]'S ARRESTS AND DETENTION IN 1999 AND 2004 DID NOT CONSTITUTE PERSECUTION WITHIN THE MEANING OF THE IMMIGRATION AND NATIONALITY ACT ("INA"); RESPONDENT CLEARLY SUFFERED PERSECUTION AT THE HANDS OF THE CHINESE GOVERNMENT, AND THUS, IS CLEARLY ELIGIBLE FOR ASYLUM.

II. THE IJ ERRED IN FINDING THAT [BIN]'S TWO DETENTIONS DO NOT RISE TO THE LEVEL OF PERSECUTION; [BIN] SUFFERED SIGNIFICANT DEPRIVATION OF FREEDOM AND LIBERTY ON ACCOUNT OF HIS BEING A FALUN GONG PRACTITIONER.

5

A.R. 12, 13.

On May 4, 2006, the BIA "adopt[ed] and affirm[ed] the decision of the [IJ] to the extent the [IJ] concluded [Bin] was not credible and did not therefore meet the burden of proof for asylum, withholding of removal and protection under the Convention Against Torture." A.R. 2. The BIA did not address Bin's two allegations of error, having instead adopted the adverse credibility determination.

## II.

We generally have jurisdiction to review a final order of removal under section 242(a)(1) of the Immigration and Nationality Act (INA). See 8 U.S.C. § 1252(a)(1); Yan Lan Wu v. Ashcroft, 393 F.3d 418, 421 (3d Cir. 2005). Section 242(d)(1) of the INA, however, limits our jurisdiction to cases where a petitioner "has exhausted all administrative remedies available as of right . . . ." 8 U.S.C. § 1252(d)(1); see Abdulrahman v. Ashcroft, 330 F.3d 587, 594-95 (3d Cir. 2003).

Where we do have jurisdiction to entertain a petition for review and "the BIA adopted the IJ's opinion, we treat that opinion as the opinion of the [BIA]." Zhang v. Gonzales, 405 F.3d 150, 155 (3d Cir. 2005). Accordingly, we review the IJ's opinion to the extent the BIA relied upon it. Wang v. Att'y Gen., 423 F.3d 260, 267 (3d Cir. 2005).

Review of an IJ's decision, including an adverse credibility determination, "is conducted under the substantial evidence standard which requires that administrative findings of fact be upheld 'unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Chen v. Gonzales, 434 F.3d 212, 216 (3d Cir. 2005) (quoting 8 U.S.C. § 1252(b)(4)(B)). In other words, adverse credibility determinations are afforded deference provided the IJ "suppl[ies] specific, cogent reasons why the applicant is not credible." Chukwu v. Att'y Gen., 484 F.3d 185, 189 (3d Cir. 2007); Gao v. Ashcroft, 299 F.3d 266, 276 (3d Cir. 2002). Under the law applicable to Bin's petition, the inconsistencies identified by the IJ must not be "minor" and must go to the heart of the

6

petitioner's claim. Gabuniya v. Att'y Gen., 463 F.3d 316, 322 (3d Cir. 2006).[5]

## III.

The Government argues that Bin did not raise the issue of the IJ's credibility determination to the BIA, thereby failing to exhaust his administrative remedies, and thus depriving us of jurisdiction under § 1252(d)(1). Bin counters that we have jurisdiction to consider the credibility determination because he did raise the issue before the BIA, thereby exhausting his administrative remedies. In the alternative, Bin argues that even if he did not raise the credibility determination, the BIA's sua sponte consideration of the issue provides us with jurisdiction. For the reasons discussed below, we conclude that Bin did not raise the IJ's adverse credibility finding to the BIA, but because the BIA considered the credibility issue sua sponte, we nonetheless have jurisdiction to review it.

## A.

As stated earlier, under § 1252(d)(1), "a court may review a final order of removal only if [] the alien has exhausted all administrative remedies available to the alien as of right . . . ." 8 U.S.C. § 1252(d)(1). The parties dispute what Congress meant by the term "administrative remedies." While our jurisprudence has been less than clear as to whether the statute requires exhaustion of administrative procedures, claims, or issues, compare Khan v. Att'y Gen., 448 F.3d 226, 236 n.8 (3d Cir. 2006), with Zheng v. Gonzales, 417 F.3d 379, 383 (3d Cir. 2005), we are bound by those opinions that have interpreted issue exhaustion as a statutory

---

[5] Bin's claims for relief antedate the change in law brought by the REAL ID Act of 2005. See Kaita v. Att'y Gen., 522 F.3d 288, 296 & n.6 (3d Cir. 2008) (explaining that for claims filed after May 11, 2005, 8 U.S.C. § 1158(b)(1)(B)(ii) permits an IJ to make "a credibility determination . . . without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim") (quotation marks omitted).

requirement. See, e.g., Kibinda v. Att'y Gen., 477 F.3d 113, 120 n.8 (3d Cir. 2007) (finding petitioner's unraised issue unexhausted and thus precluded by § 1252(d)(1)'s "statutory [exhaustion] requirement"); Abdulrahman, 330 F.3d at 594-95 (same).[6] As

---

[6] Over the last several years, a number of our sister courts of appeals have struggled with "the question whether the failure to raise an *issue* before the BIA is a jurisdictionally-fatal failure to exhaust an administrative *remedy* for purposes of 8 U.S.C. § 1252(d)(1), or simply raises the non-jurisdictional question whether review of that issue is precluded by the doctrine of administrative exhaustion." Zine v. Mukasey, 517 F.3d 535, 539-40 (8th Cir. 2008) (emphasis in original) (resolving the case on narrower grounds so as not to "enter this thicket"). For example, both the Courts of Appeals for the First and Eighth Circuits were "very tempt[ed]" to find that § 1252(d)(1) does not preclude a court of appeals from considering issues that an alien did not present to the agency. See Sousa v. I.N.S., 226 F.3d 28, 31 (1st Cir. 2000) ("If we were writing on a clean slate, it would be very tempting to treat [petitioner]'s forfeit of his claim as something less than a jurisdictional objection."); Etchu-Njang v. Gonzales, 403 F.3d 577, 582 (8th Cir. 2005). While both courts ultimately found themselves bound by precedent to treat issue exhaustion as a jurisdictional requirement, it is not clear that they treated issue exhaustion as a "truly jurisdictional" requirement. See Zhong v. U.S. Dep't of Justice, 489 F.3d 126, 130 n.6 (2d Cir. 2007) (Calabresi, J., concurring in the denial of rehearing en banc) (noting that since the Etchu-Njang and Sousa courts contemplate exceptions to the "jurisdictional" issue exhaustion requirement, the requirement cannot be a "truly jurisdictional" one).

Moreover, these cases were decided without consideration of a line of "powerful statements" by the Supreme Court "that courts should be reluctant to make issues jurisdictional rather than mandatory unless statutory language requires it . . . ." Zhong, 489 F.3d at 134 (Calabresi, J. concurring in the denial of rehearing en banc); see, e.g., Arbaugh v. Y & H Corp., 546 U.S. 500, 510-11 (2006) (noting that "[j]urisdiction . . . is a word of many, too many, meanings" and that the Supreme Court, "no less than other courts,

compared to judicially-crafted exhaustion doctrines, statutory exhaustion requirements deprive us of jurisdiction over a given case. Metro. Life Ins. Co. v. Price, 501 F.3d 271, 278-79 (3d Cir. 2007); see Xie v. Ashcroft, 359 F.3d 239, 245 n.8 (3d Cir. 2004).

Accordingly, a petitioner is deemed to have "exhausted all administrative remedies," 8 U.S.C. § 1252(d)(1), and thereby "preserves the right of judicial review," Adbulrahman, 330 F.3d at 594-95, if he or she raises all issues before the BIA. We do not, however, apply this principle in a draconian fashion. See Joseph v. Att'y Gen., 465 F.3d 123, 126 (3d Cir. 2006) (noting the Court's "liberal exhaustion policy"). Indeed, "so long as an immigration petitioner makes some effort, however insufficient, to place the Board on notice of a straightforward issue being raised on appeal, a petitioner is deemed to have exhausted her administrative

---

has sometimes been profligate in its use of the term," but cautioning that "unrefined dispositions . . . should be accorded no precedential effect on the question whether the federal court had authority to adjudicate the claim in suit") (quotation marks omitted); Kontrick v. Ryan, 540 U.S. 443, 455 (2004) ("Clarity would be facilitated if courts and litigants used the label 'jurisdictional' not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority."). In light of the Supreme Court's repeated admonitions, the Court of Appeals for the Second Circuit recently revisited its issue exhaustion jurisprudence and held that issue exhaustion is a mandatory, though not jurisdictional, rule. See Zhong v. U.S. Dep't of Justice, 480 F.3d 104, 107 (2d Cir. 2007); see also Korsunskiy v. Gonzales, 461 F.3d 847, 849 (7th Cir. 2006) (noting, in light of the recent Supreme Court cases, that "[e]xhaustion is a condition to success in court but not a limit on the set of cases that the judiciary has been assigned to resolve").

Thus, while there is reason to cast doubt upon the continuing validity of our precedent holding that issue exhaustion is a jurisdictional rule, short of a review en banc, we must dutifully apply that precedent.

9

remedies." Id. (quotation marks omitted); see Bhiski v. Ashcroft, 373 F.3d 363, 367-68 (3d Cir. 2004); Yan Lan Wu, 393 F.3d at 422 (explaining Bhiski and observing that "when a claim is not so complex as to require a supporting brief, simply putting the Board on notice through a Notice of Appeal is sufficient").

For example, in Abdulrahman v. Ashcroft, petitioner Abdulrahman argued to the BIA "that the IJ erred in her credibility determination and that her findings were not substantially supported by the evidence." 330 F.3d at 594. Before this Court, Adbulrahman then asserted that "the IJ erroneously applied the more stringent 'more likely than not' standard, applicable to withholding of removal, to his asylum claim that he suffered past persecution." Id. We found Abdulrahman's attempt to argue that he had raised the burden of proof issue before the BIA to be "in vain." Id. at 595. Neither his notice of appeal nor his written brief "viewed expansively . . . even suggest[ed] the issue." Id. We observed that Abdulrahman's assertion before the BIA that the IJ "erred as a matter of law and discretion," was a "generalized claim [that] did not alert the Board to the issue he [sought] to raise for the first time here." Id. (quotation marks omitted); see Joseph, 465 F.3d at 126 (finding an issue not exhausted where "petitioner did nothing to alert the BIA that he wished to appeal the IJ's determination that he was not *prima facie* eligible for naturalization"). As Abdulrahman had failed to put the Board on notice of the issue that he then raised before this Court, we appropriately declined to interfere with the agency's decisionmaking process by ruling on a contention the BIA had not addressed. Abdulrahman, 330 F.3d at 594-95.

In Yan Lan Wu v. Ashcroft, petitioner Yan argued in her Notice of Appeal to the BIA that "the Immigration Judge ignored the fact that [her] father was jailed and tortured by the Chinese government as an underground Christian in China, and erred in finding that [she] doesn't have a fear of [the] Chinese government but the local people." 393 F.3d at 422 (quotation marks omitted). Additionally, in her supporting brief Yan claimed that she had "presented sufficient evidence to the effect that she has face[d] past persecution and will face future persecution on account of her Christian faith," "that police raided [her] home, and that her home

was under surveillance." Id. (quotation marks omitted). Before our Court, Yan argued that the IJ improperly relied on a preliminary statement she had made at the airport and that the IJ's decision was not supported by substantial evidence. The Government contended that Yan failed to exhaust her administrative remedies, asserting that Yan "intimates that the Immigration Judge's reliance on the [airport] statement was misplaced but that this argument was never raised before the Immigration Judge or on appeal to the Board . . . ." Id. We nevertheless found that Yan did "contend in her Notice of Appeal that the Immigration Judge's conclusion [was] not supported by substantial evidence within the record," and thus the BIA "was put on notice that there was a claim of error hovering around the Immigration Judge's findings and, consequently, her exclusive reliance on the airport interview, during its review de novo." Id; see also Bhiski, 373 F.3d at 367-69 (explaining that petitioner's ineffective assistance of counsel argument was exhausted despite his failure to aver, in the Notice of Appeal, that he suffered prejudice, and despite his failure to file a supporting brief).

In the present case, Bin's current counsel seemed to concede at oral argument that Bin's previous counsel had failed to use *any* language in his Notice of Appeal or brief to the BIA such that the BIA would suspect a claimed error even "hovering around" the IJ's credibility determination. See Yan Lan Wu, 393 F.3d at 422. Bin's Notice of Appeal pressed no arguments whatsoever, but instead merely mentioned that a separate written brief would be submitted. The brief, in turn, referred only to whether Bin's arrests and detention "rise to the level of persecution" or "constitute persecution within the meaning of the [INA] . . . ." A.R. 12, 13. Thus, unlike in Yan Lan Wu, Bin's Notice of Appeal and his brief did absolutely nothing to alert the BIA that he was challenging the IJ's credibility determination. Indeed, this case is the precise inverse of Abdulrahman: whereas the petitioner there challenged the IJ's factual findings before the BIA but not the applicable legal standard, here, Bin challenged the legal standard before the BIA, but not the IJ's factual findings (namely, the credibility determination). See 330 F.3d at 594. As in Abdulrahman, we reject Bin's argument that he raised the relevant issue in this case.

Perhaps recognizing Bin's failure explicitly to raise the credibility issue to the BIA, Bin's counsel makes an alternative contention: since an asylum applicant without evidence corroborating his claims of past persecution must testify credibly in order to meet his burden of proof, Bin's appeal to the BIA only makes sense if he is appealing the IJ's adverse credibility determination. Pet'r Reply Br. at 4-5 (citing Lukwago v. Ashcroft, 329 F.3d 157, 177 (3d Cir. 2003)). Put another way, since Bin cannot prevail on his legal claims without also successfully challenging the IJ's adverse credibility determination, the latter issue is implicit in his appeal to the BIA. Bin is asking us, in effect, to create a bright-line rule: any time an IJ has made an adverse credibility determination and there is no corroborating evidence, that issue is necessarily before the BIA on appeal.

We find no authority to support this position. We have said that as long as the petitioner "made some effort to exhaust, albeit insufficient," we will exercise jurisdiction over the petitioner's claims. Bhiski, 373 F.3d at 367. Bin has, however, made no such effort. Out of respect for the administrative process, we will not require the BIA to guess which issues have been presented and which have not. Likewise, we will not punish the BIA by interfering in the administrative process with regard to issues that the BIA did not address. Considering the documents supplied by Bin, we have no reason to believe that he put the BIA on notice that he was challenging the IJ's adverse credibility determination. Cf. Yan Lan Wu, 393 F.3d at 422 (exercising jurisdiction over petitioner's claims where "we [were] confident that [petitioner]'s Notice of Appeal and brief in support of [petitioner's] application made the Board aware of what issues were being appealed"). Accordingly, Bin failed to raise the adverse credibility issue to the BIA.

B.

Having determined that Bin failed to raise the issue of the IJ's credibility determination, we must now address Bin's contention that we nonetheless have jurisdiction because the BIA, sua sponte, considered this issue and adopted and affirmed the IJ's decision on this basis. There is certainly a degree of confusion in

12

this area. See Zine v. Mukasey, 517 F.3d 535, 540 (8th Cir. 2008) (recognizing the "disagreement among our sister circuits on the [] question whether a claim or issue not presented to the BIA, but considered by the BIA sua sponte, is jurisdictionally barred for failure to exhaust administrative remedies").[7] We note, however, that of the approximately seven courts of appeals to address whether the BIA's decision to consider an issue provides the court with jurisdiction over the petition for review, only one per curiam opinion by the Court of Appeals for the Eleventh Circuit would find a court without jurisdiction in a case such as this one. Compare Amaya-Artunduaga v. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006) (per curiam) (holding that the court lacked "jurisdiction over a claim when an alien, without excuse or exception, fail[ed] to exhaust that claim," even though "the BIA nonetheless consider[ed] the underlying issue sua sponte"), with Sidabutar v. Gonzales, 503 F.3d 1116, 1119-20 (10th Cir. 2007) (holding that the BIA's sua sponte consideration of petitioners' claims served as an agency determination that the issues were sufficiently exhausted to confer the court with jurisdiction under § 1252); Zine, 517 F.3d at 540 (accepting "the agency's determination that the persecution issue was adequately exhausted as to both [asylum and withholding of removal] claims and therefore reach[ing] the merits of the withholding" claim despite the petitioner's failure to raise it explicitly on appeal to the BIA); Pasha v. Gonzales, 433 F.3d 530, 532-33 (7th Cir. 2005) (explaining that where the BIA could have summarily dismissed an appeal for failure to raise an issue with specificity, but instead

---

[7] To add to the confusion, courts have taken related, but slightly different approaches to contentions such as Bin's. Some courts begin by addressing, as we have in Part A, whether the petitioner in fact raised the relevant claim or issue, thereby exhausting his or her administrative remedies. See, e.g., Sidabutar v. Gonzales, 503 F.3d 1116, 1119 (10th Cir. 2007). Other courts skip this first step and focus simply on the fact that the BIA addressed the issue, sua sponte or not. See, e.g., Zine, 517 F.3d at 540. Regardless, as we discuss above, the result is the same: the BIA's consideration of an issue is sufficient to provide us with jurisdiction over that issue.

13

affirmed on the merits, the exhaustion requirement was waived); Adebe v. Gonzales, 432 F.3d 1037, 1041 (9th Cir. 2005) (en banc) (same); Hassan v. Gonzales, 403 F.3d 429, 433 (6th Cir. 2005) (same); Johnson v. Ashcroft, 378 F.3d 164, 170 (2d Cir. 2004) (same); see also Singh v. Gonzales, 413 F.3d 156, 160 n.3 (1st Cir. 2005) (explaining that even claims not exhausted before the BIA may be addressed by a court of appeals where the BIA summarily affirmed the IJ's entire opinion, thus rendering the IJ's decision the final agency determination for purpose of appellate review); Arreguin-Moreno v. Mukasey, 511 F.3d 1229, 1232 (9th Cir. 2008) (explaining that court was not deprived of jurisdiction despite petitioner's failure to raise the issue before the BIA where all issues presented to the IJ were deemed to have been presented to the BIA); cf. Wilson v. Pena, 79 F.3d 154, 165 (D.C. Cir. 1996) (explaining, in the Title VII context, that "[w]here the agency has taken final action based on an evaluation of the merits, it cannot later contend that the complainant failed to exhaust his remedies"). We agree with the logic of the majority of our fellow courts of appeals on this issue and find that we have jurisdiction to address the IJ's adverse credibility determination because the BIA considered the issue sua sponte.

For example, in Sidabutar v. Gonzales, petitioners' appeal to the BIA challenged the IJ's determinations regarding asylum, but did not contest the IJ's finding that petitioners were ineligible for withholding of removal or protection under the CAT. 503 F.3d at 1119. While the Court of Appeals for the Tenth Circuit ordinarily would have found that petitioners' failure to pursue the latter two grounds for relief constituted a failure to exhaust their administrative remedies, the BIA sua sponte addressed and ruled on both grounds. Id. The court observed:

> [W]hile § 1252(d)(1) requires that an alien exhaust "all administrative remedies," the BIA has the authority to determine its agency's administrative procedures. If the BIA deems an issue sufficiently presented to consider it on the merits, such action by the BIA exhausts the issue as far as the agency is concerned and that is all § 1252(d)(1) requires to

confer our jurisdiction.[8]  Where the BIA determines
an issue administratively-ripe to warrant its appellate
review, we will not second-guess that determination.
Indeed, it is a touchstone of administrative law that
"the formulation of procedures [is] basically to be
left within the discretion of the agencies to which
Congress had confided the responsibility for
substantive judgments." . . .  Under 8 C.F.R. §
1003.3(b) ("specificity requirement"), an alien taking
an appeal of an IJ decision "must specifically
identify the findings of fact, the conclusions of law,
or both, that are being challenged."  Nothing in the
agency's regulations preclude the BIA from waiving
this requirement.  Indeed, the BIA has *discretionary*
authority to dismiss (and conversely, accept) appeals
lacking in specificity. . . . Where the BIA has issued
a decision considering the merits of an issue, even
sua sponte, [the interests behind the exhaustion rule]
have been fulfilled.

Id. at 1120-21 (emphasis in original) (citations omitted).

We are persuaded by the Court of Appeals for the Tenth
Circuit's reasoning in Sidabutar.  To begin with, the BIA's own
regulations provide that the BIA "*may* summarily dismiss any
appeal or portion of any appeal . . . [that] fails to specify the
reasons for the appeal . . . ."  8 C.F.R. § 1003.1(d)(2)(i) (emphasis
added); see also 8 C.F.R. § 1003.3(b); Form EOIR-26.  This
permissive language suggests that it is within the agency's
discretion to determine when to dismiss summarily an appeal for
lack of specificity and when the BIA is sufficiently apprised of the
applicable issues to entertain the appeal.  See Esponda v. Att'y
Gen., 453 F.3d 1319, 1321 (11th Cir. 2006); Cf. Bhiski, 373 F.3d

---

[8] The court clarified that "[a]lthough we do not find that DHS has
waived the exhaustion requirement in this case (rather it waived the
requirement that an issue be 'specifically' raised in the notice of appeal),
we find the authority supporting the waiver doctrine persuasive in this
context."  Id. at 1121 n.5.  Similarly, we find that the agency has waived
its specificity requirement in this case.

15

at 368 (explaining that the permissive term "may" in Notice of Appeal Form EOIR-26 suggests "that the agency believes that a brief is not necessary in all cases").  Given the BIA's substantial experience dealing with appeals from an IJ's adverse credibility determination, this discretion is well-placed.  Cf. Jasch v. Potter, 302 F.3d 1092, 1095 (9th Cir. 2002) (explaining in the Title VII context that "[w]hen an agency proceeds to reach the merits of the case rather than dismiss the claim . . . , it has determined that sufficient information exists for such adjudication.  After all, the agency itself is in a strong position to evaluate whether the complainant has sufficiently complied with [the agency's] requests.").

As Congress has empowered agencies to carry out their delegated functions, the administrative system contemplates that "agencies 'should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties.'"  Sidabutar, 503 F.3d at 1120 (quoting FCC v. Pottsville Broad. Co., 309 U.S. 134, 143 (1940)).  Given this delegation to a coordinate branch, "our role is not to substitute our own preference for the optimal administrative procedure for the agency's determination of its internal rules . . . .  Ignoring the BIA's determination of these issues would amount to a judicial determination that the Board acted ultra vires in following its own rules."  Sidabutar, 503 F.3d at 1120; see McKart v. United States, 395 U.S. 185, 194 (1969).  It is well-established that agencies may waive compliance with their "procedural rules adopted for the orderly transaction of [agency] business . . . ."  Colo. Envtl. Coal. v. Wenker, 353 F.3d 1221, 1228 (10th Cir. 2004) (quoting Am. Farm Lines v. Black Ball Freight, 397 U.S. 532, 538-39 (1970)); see Weinberger v. Salfi, 422 U.S. 749, 766-67 (1975).  As the BIA waived compliance with its specificity requirement by choosing to address Bin's petition on the merits, we may not now reject the petition for review based on that requirement.  See Angelus Milling Co. v. Comm'r of Internal Revenue, 325 U.S. 293, 297 (1945) ("If the Commissioner chooses not to stand on his own formal or detailed requirements, it would be making an empty abstraction, and not a practical safeguard, of a regulation to allow the Commissioner to invoke technical objections after he has investigated the merits of a claim and taken

16

action upon it"); Abdelqadar v. Gonzales, 413 F.3d 668, 670-71 (7th Cir. 2005) ("The agency's assertion . . . that failure to preserve an issue deprives us of subject-matter jurisdiction, so that we must ignore the agency's own forfeiture, lacks any visible means of support."); Nat'l Labor Relations Bd. v. Monsanto Chem. Co., 205 F.2d 763, 764 (8th Cir. 1953).

Holding that the BIA waived its specificity requirement does not run counter to the purposes underlying the exhaustion doctrine. The Supreme Court has explained that "[e]xhaustion is generally required as a matter of preventing premature interference with agency processes, . . . [giving the agency] an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." Salfi, 422 U.S. at 765. While these are important concerns, "[w]here the BIA has issued a decision considering the merits of an issue, even sua sponte, these interests have been fulfilled." Sidabutar, 503 F.3d at 1121. The BIA has already had an opportunity to apply its experience and expertise without judicial interference. So too, the fact that the BIA has addressed the issue independently from the IJ ensures that the record is adequate for our review. Indeed, the Sidabutar court expressly limited the application of this rule to cases in which the BIA "issues a full explanatory opinion or a discernible substantive discussion on the merits over matters not presented by the alien," distinguishing cases where "the BIA summarily affirms the IJ decision *in toto* without further analysis of the issue." Id. at 1122 (citing 8 C.F.R. § 1003.1(e)(4)).

While we need not specify the precise limitations of this rule here, we note that the BIA did issue a "discernible substantive discussion on the merits" in this case. See id. Rather than issuing a one-member streamlined opinion under 8 C.F.R. § 1003.1(e)(4), the BIA considered Bin's case as a three-member panel. It cited to Matter of Burbano, 20 I. & N. Dec. 872, 874 (BIA 1994), indicating that it had conducted an independent review of the record and had exercised its own discretion in determining its agreement with the reasoning and result of the IJ. See Paripovic v. Gonzales, 418 F.3d 240, 243 n.4 (3d Cir. 2005); Arreguin-Moreno, 511 F.3d at 1232. In exercising its independent discretion, the BIA

17

made clear that it agreed only with the IJ's adverse credibility determination, and not necessarily with the IJ's conclusions regarding the relevant standards for relief. Accordingly, exercising jurisdiction over Bin's petition for review would not prematurely interfere with the agency processes. The agency here had sufficient opportunity to correct its own errors and apply its expertise to the matter at hand. See Sagermark v. I.N.S., 767 F.2d 645, 648 (9th Cir. 1985) ("Whether or not the decision on the merits was technically before the BIA, the BIA addressed it thoroughly enough to convince us that the relevant policy concerns underlying the exhaustion requirement . . . have been satisfied here.").

While we would usually hold that a petitioner's failure to present an issue to the BIA constituted a failure to exhaust, thus depriving us of jurisdiction to consider it, here the BIA sua sponte addressed and ruled on the unraised issue. In so doing the BIA waived, as it was entitled to do, its specificity requirement under 8 C.F.R. § 1003.3(b). Because the BIA waived its specificity requirement and addressed the IJ's credibility determination on the merits, thereby exhausting the issue, we have jurisdiction to consider the petition for review. See Sidabutar, 503 F.3d at 1120.

IV.

We now address the merits of Bin's appeal. Bin seeks a new credibility determination, claiming, among other things, that the IJ incorrectly identified two purported discrepancies between Bin's testimony and his written affidavit. We disagree with Bin's arguments and hold that substantial evidence supports the IJ's credibility determination.

The first inconsistency noted by the IJ was a discrepancy between Bin's written affidavit and his testimony before the IJ concerning the reasons given for his arrest in 1999. In his affidavit, Bin stated that "[a]t the beginning of August in 1999[] five or six police officers suddenly showed up at my home. *They said that I practiced Falun Gong and believed the evil religion*. They told me that I was under arrest. I could not resist. As a result, I was taken to the police station." A.R. 339 (emphasis added). On direct examination, however, Bin stated—and then

18

repeated—that he was given no reason for the arrest, either at his house or at the police precinct. When given an opportunity to explain the contradiction, Bin merely replied that "[w]ell, I forgot sometime even what I had written in my statement." A.R. 90. He added: "I don't have a good memory in my mind and sometimes I would miss a few sentences that I have written in my statement." A.R. 90.

Bin's testimony simply cannot be reconciled with his affidavit. While Bin's affidavit stated that the arresting officers said that Bin practiced Falun Gong, Bin testified quite clearly that he was not given a reason for his arrest and that he was simply taken to the police precinct by force. Given Bin's differing positions concerning the circumstances of his arrest, there was reason for the IJ to doubt Bin's credibility.

Bin's attempt to explain the contradiction only exacerbated these doubts. In stating that he "forgot sometime even what [he] had written in [his] statement," Bin seemed to be testifying not from his independent recollection of his purported arrest, but from his recollection of what he had written in the affidavit he prepared specifically to apply for asylum. In this regard, the inconsistency between Bin's testimony and affidavit created the perception that Bin manufactured a story to tell to the IJ.

This discrepancy goes to the heart of Bin's asylum application. See Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002). Courts have recognized that "attempts by the applicant to enhance his claims of persecution" go to the heart of a petitioner's claim for relief. Sarr v. Gonzales, 485 F.3d 354, 360 (6th Cir. 2007); Damaize-Job v. I.N.S., 787 F.2d 1332, 1337 (9th Cir. 1986); see also id. (differentiating such bolstering attempts from "minor discrepancies in dates that are attributable to the applicant's language problems or typographical errors"). In this case, the IJ was not convinced that Bin was arrested at all, let alone for one of the statutorily-protected grounds necessary to be eligible for asylum and withholding of removal. Thus, a discrepancy concerning the very reason for Bin's arrest, that on the one hand would give rise to an asylum claim, or on the other hand would not,

19

goes to the heart of Bin's claim for relief.[9]

The second inconsistency relates to the manner in which Bin purportedly practiced Falun Gong after being released from detention in 1999 and before his subsequent arrest in 2004. Bin stated in his affidavit that, on occasion, he invited other Falun Gong practitioners to his parents' home to practice Falun Gong together. Before the IJ, however, Bin made clear that after 1999 he only practiced in his parents' house by himself. When asked about the discrepancy, Bin explained that "[w]ell, I did write [that I invited other practitioners to my parents' house] in my statement so I presume[d] that you knew about it," and further, that he did not understand the questions asked of him. A.R. 88-89.

This inconsistency also goes to the heart of Bin's claim. Bin claims that he was arrested for practicing Falun Gong. If he was arrested for another reason, or not arrested at all, this would be fatal to his asylum claim. Thus, the location where Bin practiced Falun Gong is relevant in that it bears on how likely it was that the Chinese authorities knew of his Falun Gong activities. If he truly practiced secretly and alone in his home, as he told the IJ, it is hard to believe that the authorities could have found out about his practice of Falun Gong and persecuted him for that reason. Bin's inconsistent testimony on this central issue is thus material to Bin's claim for relief.

---

[9] We note that this inconsistency comes amidst Bin's otherwise unpersuasive and perhaps evasive testimony: while Bin claims to have been interrogated at the police precinct, he was unable to recall what kind of questions the Chinese authorities asked of him; while Bin stated that his mother was interrogated by police, Bin did not know anything that was asked of her or when the interrogation took place; while he stated that the Chinese authorities prepared a document admonishing him not to practice Falun Gong again, Bin was unable to remember any of its contents; while he was brought by his family to see a doctor, he did not have any medical proof concerning his stomach condition; and while Bin stated that he came to the United States to apply for asylum, when approached by Border Patrol agents he stated that he came for economic reasons.

20

This discrepancy is buttressed by the IJ's finding as to Bin's demeanor. When asked how it could be that, since he practiced secretly, the authorities came to learn he was practicing Falun Gong in 2004, Bin "stuttered and was unable to provide a rational explanation . . . ." A.R. 50. We have noted that "[a]n immigration judge alone is in a position to observe an alien's tone and demeanor" and is "uniquely qualified to decide whether an alien's testimony has about it the ring of truth." Abdulrahman, 330 F.3d at 597; see Dia v. Ashcroft, 353 F.3d 228, 249-50 (3d Cir. 2003) (en banc).

Given the inconsistencies relied on by the IJ and Bin's unpersuasive demeanor, we apply our deferential standard of review and hold that a reasonable adjudicator would not be compelled to conclude that Bin was credible. See Abdulrahman, 330 F.3d at 599; see also Tarrawally v. Ashcroft, 338 F.3d 180, 187 (3d Cir. 2003) (noting that "although some minor discrepancies" between petitioner's affidavit and testimony "might be understandable," petitioner's "irreconcilable contradictory assertions" supported the IJ's adverse credibility determination). The IJ provided "specific[,] cogent reasons" for making the adverse credibility determination, Dia, 353 F.3d at 249-50, and thus, we hold that the determination was supported by substantial evidence.

V.

For the foregoing reasons, we will deny the petition for review.

21