NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-1108
_____

KRISTINA MOVSESYAN,
                                    Petitioner
                    v.

ATTORNEY GENERAL OF THE  UNITED STATES,
                                    Respondent


Petition for Review of an Order of the
Board of Immigration Appeals
(Agency File No. A099-560-004)


Submitted Pursuant to Third Circuit LAR 34.1(a)
May 26, 2010

Before: McKEE, *Chief Judge*, RENDELL and GARTH, *Circuit Judges*

(Opinion Filed: August 24, 2010)

OPINION

McKEE, *Chief Judge*.

    Kristina Movsesyan petitions for review of an order of the Board of Immigration

Appeals affirming the Immigration Judge's denial of her application for asylum,

withholding of removal, and relief under the Convention Against Torture.  For the

reasons set forth below, we will deny the petition in part and grant the petition in part, and

1

remand for further proceedings.

## I.

We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252. Because the BIA issued its own opinion that did not expressly adopt or defer to a finding of the IJ, we review only the decision of the BIA. *See Kayembe v. Ashcroft*, 334 F.3d 231, 234 (3d Cir. 2003).

Inasmuch as we write primarily for the parties who are familiar with this case, we need not set forth the underlying facts or procedural history. Although the IJ denied Movsesyan's claim based on a finding that she was not credible, the BIA did not rule on the IJ's adverse credibility determination. Rather, the BIA held that "[e]ven assuming *arguendo* that the respondent testified credibly, she has still failed to sustain her burden of proof for asylum." J.A. 28. Since there is no BIA ruling on credibility to review, "we must proceed as if [Movsesyan's] testimony were credible and determine whether the BIA's decision is supported by substantial evidence in the face of [her] assumed (but not determined) credibility." *Kayembe*, 334 F.3d. at 235.

We review the BIA's findings of fact under the substantial evidence standard. *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002). "We will uphold the findings of the BIA to the extent that they are supported by reasonable, substantial and probative evidence . . . , and will reverse those findings only if there is evidence so compelling that no reasonable factfinder could conclude as the BIA did." *Kayembe*, 334 F.3d at 234.

2

## II.

The Immigration and Nationality Act gives the Attorney General or the Secretary of Homeland Security the authority to grant asylum to any alien who is a "refugee" under 8 U.S.C. § 1101(a)(42)(A). 8 U.S.C. § 1158(b)(1)(A). To receive "refugee" status, an asylum applicant must establish "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). An asylum applicant may obtain asylum by proving past persecution on account of a statutorily enumerated ground or a well-founded fear of future persecution on account of a statutorily enumerated ground. *Espinosa-Cortez v. Attorney Gen. of the U.S.*, 607 F.3d 101, 107 (3d Cir. 2010).

## A.

If an asylum applicant establishes that she suffered past persecution, then a rebuttable presumption exists that the applicant has a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1); *see, e.g., Espinosa-Cortez*, 607 F.3d at 107. "[T]he term 'persecution' . . . include[s] 'threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom.'" *Kibinda v. Attorney Gen. of the U.S.*, 477 F.3d 113, 119 (3d Cir. 2007) (quoting *Fatin v. Immigration and Naturalization Servs.*, 12 F.3d 1233, 1240 (3d Cir. 1993)). "Persecution refers to extreme conduct." *Fatin*, 12 F.3d at 1240 n.10. To qualify for asylum based on past persecution, an applicant must show: "(1) an incident, or incidents, that rise to the level of

3

persecution; (2) that is on account of one of the statutorily-protected grounds; and (3) is committed by the government or forces the government is either unable or unwilling to control." *Abdulrahman v. Ashcroft*, 330 F.3d 587, 592 (3d Cir. 2003) (internal quotation marks omitted).

Movsesyan claims she suffered past persecution based on political opinion. She was threatened and followed on numerous occasions. On one such occasion she was attacked and suffered two fractured ribs. She was not able to identify any of the perpetrators.

In its opinion, the BIA stated: "Although the respondent testified that she received threatening telephone calls, was occasionally followed, and was attacked on account of her political opinion, we find that she failed to establish that these incidents, whether considered individually or cumulatively, rise to the level of past persecution." J.A. 28. That conclusion is supported by substantial evidence. Although the treatment Movsesyan described is certainly suggestive of an oppressive atmosphere and an oppressive regime, her testimony about things that actually happened to her does not rise to the level of "extreme conduct" required to prevail on a claim of past persecution. *See Fatin*, 12 F.3d at 1240 n.10. Accordingly, we must deny Movsesyan's asylum petition to the extent that it is based on past persecution for political opinion.

**B.**

However, Movsesyan also claims that she has a well-founded fear of future

4

persecution. To establish a well-founded fear of persecution, an applicant must demonstrate both a subjective fear of persecution and an objectively reasonable fear of persecution. *Zubeda v. Ashcroft*, 333 F.3d 463, 469 (3d Cir. 2003). "The subjective prong requires showing that the fear is genuine. Determination of an objectively reasonable possibility requires ascertaining whether a reasonable person in the alien's circumstances would fear persecution if returned to the country in question." *Id*. (citation omitted).

As noted, Movsesyan alleges that the persecution she fears results from her political opinion and the imputed political opinion of her father.[1] We have held that an asylum applicant may establish a well-founded fear of future persecution based on a claim of imputed political opinion. *See, e.g., Kayembe*, 334 F.3d at 234. "At the root of the concept of persecution on account of imputed political opinion is the fact that persecution may be on account of a political opinion the applicant actually holds or on account of one the [persecutor] has imputed to him." *Espinosa-Cortez*, 607 F.3d at 112 n.8 (internal quotation marks omitted).

---

[1] The government argues that we lack jurisdiction to consider the imputed political opinion claim because it was not raised on appeal to the BIA. Although Movsesyan did not raise the issue that her asylum claim should have been considered on the basis of imputed political opinion before the BIA, the BIA considered it *sua sponte*. In its opinion, the BIA considered that Movsesyan "was attacked ('used as a weapon') against her father, a prominent journalist." J.A. 28. Additionally, it found that the assassination attempt on her father was "too attenuated to establish a present basis for a well-founded fear of persecution." J.A. 29.

5

The BIA held that Movsesyan "failed to present sufficiently detailed testimonial or documentary evidence to establish that a reasonable person in her circumstances would fear persecution upon her return to Armenia." J.A. 28-29. The BIA reached that conclusion because: (1) Movsesyan left Armenia over three years ago; (2) she no longer works with journalists; (3) her family still lives in Armenia; and (4) she has not received any threats since 2005. J.A. 29. The BIA also stated, "Although the respondent's father was recently the victim of an assassination attempt, we find this too attenuated to establish a present basis for a well-founded fear of persecution." *Id.*

Although Movsesyan left Armenia more than three years ago and is currently a psychologist, her father remains in Armenia, he is still an active media figure, and he continues to oppose the government. We see nothing on this record to suggest that Movsesyan's absence from Armenia or her career change would somehow mitigate the chances of her father's political opinion being imputed to her if she were to return to Armenia, or that she no longer has reason to fear reprisals. We realize, of course, that "when family members remain in petitioner's native country without meeting harm, . . . the reasonableness of a petitioner's well-founded fear of future persecution is diminished." *Lie v. Ashcroft*, 396 F.3d 530, 537 (3d Cir. 2005). However, any conclusion that Movsesyan's family has not suffered harm is simply not supported by the record. Indeed, as we have just noted, her father was reportedly the target of an assassination attempt and he was threatened by the Minister of Communication and Transport, only

6

weeks before Movsesyan's removal hearing.

We disagree that such evidence is somehow insufficient to establish that an objectively reasonable person in Movsesyan's circumstances would fear persecution upon being returned home. This record contains both testimony and exhibits that would support a finding that A1 Plus and Mesrop Movsesyan were critical of the government. Movsesyan's father expressed his anti-government political opinion on numerous occasions, including in a published interview. When Movsesyan was attacked, the assailant told her that he was "going to rape [her], and tomorrow he's going to tell [her] father what a good time he had." A.R. 178. There is no realistic way to interpret the reference to her father other than that the assailant was threatening an attack on Movsesyan to punish her father for his opposition to the government. Moreover, the record contains testimony that when Movsesyan told the Chairman of the National Commission on Television and Radio that she was Mesrop Movsesyan's daughter, he threatened her and had her removed from the building. There is also testimony that Mesrop Movsesyan received several threats directed at his daughter.

In addition, there is evidence that Movsesyan was not only the daughter of the owner of A1 Plus, she was also an employee of that media outlet. That would mean that it is even more likely that she would be targeted because of real or imputed political opinions. She was reportedly in Parliament with A1 Plus during a terrorist attack, which the government did not want A1 Plus to broadcast. She also told a government official

7

that he lacked a conscience for denying A1 Plus a television frequency.

In addition, this record contains more than Movsesyan's personal experiences and her testimony about threats and violence directed toward her and her father. The abuse of journalists in Armenia is well documented by the United States Department of State in their Country Reports and by several international organizations. Accordingly, the record does not support a conclusion that, assuming her credibility, Movsesyan has not established eligibility for asylum based on a well founded fear of future persecution.

**IV.**

Movsesyan also seeks relief in the form of withholding of removal. To qualify for withholding of removal, an "alien must first establish by a clear probability that his/her life or freedom would be threatened in the country of removal. Clear probability means that it is more likely than not that an alien would be subject to persecution." *Zubeda*, 333 F.3d at 469 (citation and internal quotation marks omitted). The clear probability standard is a higher burden of proof than the standard of proof required to establish a well-founded fear of persecution required for asylum. *Id*.

Here, the BIA denied Movsesyan's claim for withholding of removal because it found that she could not satisfy the lesser burden of proof required for asylum. Because we are granting Movsesyan's petition on her asylum claim based upon a well-founded fear of future persecution, we will also grant her petition on her claim for withholding of removal based on future persecution and that claim can now be considered on remand.

## V.

Lastly, Movsesyan seeks relief pursuant to the Convention Against Torture

("CAT").[2]  "An applicant for relief on the merits under the Convention Against Torture

bears the burden of establishing 'that it is more likely than not that he or she would be

tortured if removed to the proposed country of removal.'" *Sevoian v. Ashcroft*, 290 F.3d

166, 174-75 (3d Cir. 2002) (quoting 8 C.F.R. § 208.16(c)(2)).

The BIA held that Movsesyan's CAT claim failed because there was insufficient

evidence that she would be tortured by the government or with its acquiescence upon her

return to Armenia.  Although Movsesyan's petition refers to the CAT, she does not

develop any argument to support her claim for relief under the CAT, and we discern

nothing in the record that would support a claim for relief under the CAT.  Therefore, we

will deny Movsesyan's petition as to the CAT claim.

## VI.

For the foregoing reasons, we will deny the petition as to Movsesyan's claim for

asylum on the basis of past persecution and her claim for relief under the CAT.  However,

we will grant the petition as to Movsesyan's claim for asylum on the basis of a well-

---

[2] Unlike "judicially-crafted doctrines, statutory exhaustion requirements deprive us of jurisdiction over a given case." *Lin*, 543 F.3d at 120.  Because exhaustion is a statutory requirement for review of a final order of removal, *see id.*, we note that Movsesyan did not raise her CAT claim in her appeal to the BIA.  However, Movsesyan has exhausted her CAT claim because the BIA considered it *sua sponte.  See id.* at 124 n.7 ("[T]he BIA's consideration of an issue is sufficient to provide us with jurisdiction over that issue.").

9

founded fear of future persecution and her claim for withholding of removal. The BIA's order is vacated to the extent it denies relief based upon future persecution, and we will remand to the BIA for further proceedings consistent with this opinion.

GARTH, *Circuit Judge, dissenting*:

The majority, in holding that we should grant Movsesyan's petition, has held that Movsesyan has not suffered past persecution. It has done so despite the BIA's determination as reflected in the record, which reveals that (1) Movsesyan left Armenia over three years ago, (2) she no longer works with journalists, (3) her family still lives in Armenia, and (4) she has not received any threats since 2005.

I agree that Movsesyan has not been the victim of past persecution, and in light of that unanimous determination by our panel and the conclusions of the BIA, I cannot agree that Movsesyan meets the criteria for fear of future persecution.[1] That being so, I respectfully dissent.

1

---

[1] To establish that a fear of future persecution is "well-founded," an asylum applicant must show both that her "fear is genuine" and that "a reasonable person in [her] circumstances would fear persecution if returned to the country in question." Espinosa-Cortez v. Att'y Gen., 607 F.3d 101, 108 (3d Cir. 2010) (citations and internal quotation marks omitted).