NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 19-2295

———————

ELVIN ALBERTO CRUZ-CARBAJAL,
a/k/a Elvin Cruz, a/k/a Elvin Carbajal,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
                                        Respondent

———————

On Petition for Review of a Final Order
of the Board of Immigration Appeals
Immigration Judge: Rosalind K. Malloy
(No. A206-907-966)

———————

Submitted Under Third Circuit L.A.R. 34.1(a)
March 10, 2020

Before: McKEE, AMBRO, and PHIPPS, Circuit Judges

(Opinion filed: April 1, 2020)

———————

OPINION*

———————

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

AMBRO, <u>Circuit Judge</u>,

Petitioner Elvin Alberto Cruz-Carbajal petitions for review of an order of the Board of Immigration Appeals ("BIA") dismissing his appeal of an immigration judge's order denying his claims for relief and ordering his removal. We deny the petition.

I.[1]

Cruz-Carbajal, a citizen of Honduras, entered the United States without inspection in 2008. In 2015, the Department of Homeland Security ("DHS") began removal proceedings against him. He conceded removability but sought relief from removal in the forms of asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").

In support of these claims, Cruz testified before an immigration judge ("IJ") that, in January 2015, his uncle and his aunt's two nephews had been shot and killed in Honduras during a family gathering. He testified that the assailants were three men who worked on his uncle's farm, but he did not know their names. He did not testify to, or present other evidence of, the motive for the shooting.

Cruz-Carbajal further testified that—in a separate incident "[n]ot too long" before the hearing before the IJ in December 2017—his grandfather and a woman he was with were shot and killed at the woman's house. A.R. 120:10–121:7, 121:12–15. Yet he did not know who did the shooting, and was not sure if the two incidents were connected, but he and his family suspected they were because his family "do[esn't] look for . . . problems." A.R. 121:24–122:12. He also submitted a written statement attesting that

---

[1] We have jurisdiction over this petition for review under 8 U.S.C. § 1252.

2

both he and his family are afraid of "reprisals and continued violence." A.R. 274 ¶ 13. He further explained that he is "afraid that the men who killed [his] uncle, to protect themselves and their families, will kill [him] and the rest of [his] family." *Id.*

Through counsel, Cruz-Carbajal argued before the IJ that these incidents were evidence of a "blood feud" involving his family, and that, based on his membership in the family, he had a well-founded fear that he would be killed if removed to Honduras. *See* A.R. 138:19–139:2.

The IJ denied Cruz-Carbajal relief and ordered him removed. The IJ determined that his asylum application was untimely because it was filed more than one year after his uncle's murder. And even if timely, the IJ concluded, Cruz-Carbajal had not met his burden of proving that he would be harmed because of membership in his family. Moreover, there was no evidence that the murders of Cruz-Carbajal's family members were connected, much less that they were based on their membership in the family. The IJ denied the claim for withholding of removal for this same reason. And as to the CAT claim, the IJ determined that Cruz-Carbajal had failed to demonstrate that it was more likely than not that he would be tortured if removed to Honduras.

Cruz-Carbajal appealed to the BIA, arguing that the IJ had erred in denying his claim for withholding of removal by ignoring evidence that the incidents were connected and by analyzing each in isolation. It dismissed the appeal, in the process noting that Cruz-Carbajal had not appealed the denial of his CAT claim or challenged the IJ's determination that his asylum application was untimely. The BIA agreed with the IJ that, even if the asylum application were timely, it would fail for lack of evidence that the

3

murders of Cruz-Carbajal's family members were motivated by their membership in the family. And the BIA agreed with the IJ that the withholding-of-removal claim failed for the same reason.

Cruz-Carbajal now petitions us for review. He does not appear to seek review of his asylum or CAT claims, as his brief does not challenge the BIA's conclusion that he had failed to raise them on appeal. But to the extent he does ask us to review those claims, we lack jurisdiction do so. *See* 8 U.S.C. § 1252(d)(1) (limiting our jurisdiction to claims for which the alien has "exhausted all administrative remedies"); *Lin v. Att'y Gen.*, 543 F.3d 114, 120–121 (3d Cir. 2008) (providing that, for an alien to have exhausted all administrative remedies as to an issue under § 1252(d)(1), an alien must have made some effort to place the BIA on notice that he was appealing the issue).

What remains is Cruz-Carbajal's claim for withholding of removal. He contends that the BIA erred in dismissing his appeal as to that claim, as he "presented clear, convincing, and credible evidence that he would suffer persecution . . . if removed to Honduras at the hands of the killers of his uncle and grandfather because of his family's involvement in a blood-feud." Pet'r's Br. 33.

## II.

Withholding of removal prohibits removal of an alien whose "life or freedom would be threatened in that country *because of the alien's . . . membership in a particular social group*." 8 U.S.C. § 1231(b)(3)(A) (emphasis added). Accordingly, an alien seeking withholding of removal must demonstrate a link between the persecution he fears and his membership in the group. *See Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677,

4

684–85 (3d Cir. 2015) (citation omitted) (explaining that the alien must establish "that his membership in the group is 'one central reason' why he was or will be targeted for persecution"). For membership in a particular social group to qualify as "'one central reason,' it must be an essential or principal reason for the persecution." *Id.* at 685. "[I]solated criminal acts do not constitute persecution on account of a protected characteristic." *Id.*

We review for substantial evidence the BIA's determination that Cruz-Carbajal has not demonstrated that membership in his family[2] was one central reason for the harm he fears. *See id.* at 686. Accordingly, we cannot disturb that determination "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

The BIA's determination is supported by substantial evidence. Cruz-Carbajal introduced no evidence that the murders of his uncle and his aunt's nephews at the family gathering, and those of his grandfather and the woman he was with—which murders were committed approximately two years apart—were connected. He introduced no evidence as to the motive for either murder, or that the assailants were even the same. And he introduced no evidence that the assailants were aware of the family membership of the victims.

Cruz-Carbajal also contends that both the IJ and BIA "failed to address and analyze [his] social group[,] 'family involved in a blood feud,' despite the fact that [he]

---

[2] Both the IJ and the BIA apparently assumed membership in a family to be a cognizable particular social group. Accordingly, that question is not presented by this petition for review.

had indicated in his written affidavit that his fear was based on his family's involvement in a blood feud." Pet'r's Br. 18–19. The record belies his argument. The IJ considered and rejected the claim that his family was engaged in a blood feud, concluding that there was no evidence of record from which it could conclude that the killings were motivated by membership in Cruz-Carbajal's family.

\* \* \* \* \*

For these reasons we deny the petition for review.