

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-14-2008

# Gyamtso v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3559

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Gyamtso v. Atty Gen USA" (2008). *2008 Decisions.* Paper 371.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/371

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-3559
_____

TASHI GYAMTSO,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A98-586-979)
Immigration Judge:  Honorable Eugene Pugliese
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 8, 2008

Before: RENDELL, GREENBERG AND VAN ANTWERPEN, <u>Circuit</u> <u>Judges</u>

Filed: October 14, 2008
_____

OPINION OF THE COURT
_____

PER CURIAM

Petitioner Tashi Gyamtso, allegedly a native of Tibet and citizen of the People's

Republic of China, filed a timely petition for review of the decision of the Board of

Immigration Appeals (BIA) dismissing his appeal of the immigration judge's (IJ) denial of his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").  For the following reasons, we will deny the petition for review.

We assume the parties' familiarity with the underlying facts in this case and, thus, we summarize only the pertinent procedural history.  Gyamtso entered the United States in November 2003, presenting himself as Ngawang Bhutia, an Indian citizen with a valid Indian passport and B-1 tourist visa.  Less than a year later, Gyamtso filed an application for asylum, claiming that his Indian passport and tourist visa were obtained by fraud and that he was Tashi Gyamtso, a Tibetan native and citizen of the People's Republic of China seeking refuge in the United States.  He alleged that he fled to India from Tibet with his wife and three children because he was persecuted for advocating freedom of religion and freedom from Chinese rule.  He said that he feared future persecution if returned to China.

On November 12, 2004, the Department of Homeland Security ("DHS") issued a Notice to Appear charging Gyamtso with being subject to removal under Immigration and Nationality Act § 237(a)(1)(A), 8 U.S.C. § 1227(a)(1)(A), for arriving in the United States without an immigrant visa or other valid travel documents.  Gyamtso admitted the charges and conceded removability.  On December 15, 2005, following a hearing, the Immigration Judge (IJ) denied Gyamtso's applications for relief and ordered him removed

2

to India. The BIA adopted and affirmed the IJ's decision and dismissed the appeal.

We have jurisdiction to review final orders of the BIA under section 242(a)(1) of the INA, 8 U.S.C. § 1252(a)(1). Where, as here, the BIA expressly adopts the IJ's decision and discusses some of the IJ's reasoning, we review the decisions of both the IJ and the BIA. Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). We review the factual findings of the IJ, including adverse credibility findings, for substantial evidence. Abdulrahman v. Ashcroft, 330 F.3d 587, 597 (3d Cir. 2003). Under the deferential substantial evidence standard for review, the BIA's findings must be upheld unless the evidence not only supports a contrary conclusion, but compels it. Xie v. Ashcroft, 359 F.3d 239, 243 (3d Cir. 2004) (quoting INA § 242(b)(4)(B), 8 U.S.C. § 1252(b)(4)(B)). We do not overturn a credibility finding simply because we would reach a different conclusion. Gabuniya v. Attorney General, 463 F.3d 316, 321 (3d Cir. 2006). "In making a credibility determination, the IJ must provide 'specific, cogent reasons[s]' why the applicant is not credible." Id. (citation omitted). Only inconsistencies going to the heart of Gyamtso's claim will be deemed to compromise his credibility.[1] Chukwu v. Attorney General, 484 F.3d 185, 189 (3d Cir. 2007).

---

[1] Section 101(a)(3) of the REAL ID Act allows the trier of fact to consider any inconsistency, inaccuracy or falsehood in an asylum applicant's written or oral statements, regardless of whether they go "to the heart of the applicant's claims," but this provision "applies only to cases where the applicant applied for asylum or other relief after May 11, 2005," and accordingly does not apply in this case. Chukwu v. Attorney General, 484 F.3d 185, 189 (3d Cir. 2007).

Gyamtso challenges the IJ's denial of his asylum application, claiming, among other things, that the IJ erred in making an adverse credibility determination based on a discrepancy between his supplementary I-589 statement and his hearing testimony regarding the gender of his children. Gyamtso testified that he fled China at night with his son and that he traveled to Lhasa with his son the following day. A.R. 99-100. In his supplementary I-589 statement, however, he states that he left China with his youngest daughter. A.R. 000170. The BIA determined that the IJ's adverse credibility finding was sufficiently supported by the record. The BIA held that the discrepancy went to the heart of Gyamtso's identity claim because it called into question the Chinese household register, which indicated that Gyamtso had three daughters. We cannot say that any reasonable adjudicator would be compelled to conclude to the contrary.

Gyamtso claims that the error in his testimony regarding his child's gender was due to faulty translation. The Government counters that we lack jurisdiction to consider this argument because Gyamtso failed to raise it on appeal to the BIA. The Court's jurisdiction is limited under § 242(d)(1) of the INA, to cases where the petitioner "has exhausted all administrative remedies available as of right . . . ." 8 U.S.C. 1252(d)(1); see Abdulrahman v. Ashcroft, 330 F.3d 587, 594-95 (3d Cir. 2003). A petitioner has exhausted his administrative remedies if he raises all issues before the BIA. Although the exhaustion principle is not applied "in a draconian fashion," "[o]ut of respect for the administrative process, we will not require the BIA to guess which issues have been

4

presented and which have not." Lin v. Attorney General, No. 06-2883, 2008 WL 4167032, at **4 & 5 (3d Cir. Sept. 11, 2008). Even if a petitioner does not exhaust a claim, this Court may still have jurisdiction to consider it, if the BIA sua sponte addressed the issue on its merits. Lin, 2008 WL 416032, at *6.

We conclude that the BIA was not given sufficient notice of the faulty translation issue. The record indicates that the only argument Gyamtso raised in his notice of appeal and in his brief to the BIA regarding the IJ's adverse credibility determination was that the gender discrepancy finding was not material to his asylum claim. Moreover, the BIA did not reach the faulty translation issue sua sponte in its order. Thus, we lack jurisdiction to review the unexhausted claim.

Gyamtso also contends that the IJ and BIA erred in ruling that he failed to prove his identity as a native of Tibet and Chinese citizen. Gyamtso admitted at the removal hearing that the Indian passport was valid for a person named Ngawang Bhutia, a Buddhist monk who is a native and citizen of India, and he asserted that he was not Ngawang Bhutia. Gyamtso testified that he obtained the Indian passport and visa from an employee of the Indian Passport Agency, and he explained that he did not have his Chinese Identification card because he was told to get rid of it before he reached Nepal.

To support his asylum claim, Gyamtso produced a Tibetan Green Identification Booklet No. 0702 (Green Book) that was issued by the Office of Tibet in New York in September 2004; a letter from the Office of Tibet confirming that Gyamtso "is a bona fide

5

Tibetan refugee"; a photograph of Gyamtso with his wife in Tibet; and a verified Chinese household register, issued in October 1998, indicating, among other things, that he was born in Tibet. Other evidence he submitted included a photo of his wife and children in India; photos of himself participating in demonstrations for a free Tibet in India; a letter from the President of the Chushi Gangdruk, confirming that Gyamtso's father and uncle were in the anti-Chinese army; and unsworn affidavits from two people who knew of Gyamtso's family in Tibet.

The government submitted the "Assessment to Refer" prepared by the DHS Asylum Officer and the Forensic Documents Laboratory report (FDL Report) analyzing the physical properties of the Indian passport and visa that Gyamtso used to obtain entry into the United States.[2]

We conclude that substantial evidence supports the IJ's finding that Gyamtso is a citizen of India. An asylum applicant's nationality is a threshold question in determining his eligibility for asylum and it is his burden to establish. See Wangchuck v. Dep't of Homeland Security, 448 F.3d 524, 528 (2d Cir. 2006); 8 C.F.R. § 1208.13(a). Here, the IJ reasonably relied on the FDL Report,[3] which concluded that the allegedly fraudulent

_____

[2] The government also submitted Gyamtso's Chinese household register and the Tibetan Green Book for forensics analysis. The FDL Report indicates that there is an "attached memorandum," explaining why the lab did not examine the passport and Green Book photographs. A.R. 115. Neither the passport nor the memorandum is part of the administrative record.

[3] In his brief, Gyamtso does not specifically challenge the reliability of the FDL report, and thus, he has waived the issue in this appeal. "An issue is waived unless a party raises

6

Indian passport was in fact authentic because it "conforms to comparable genuine specimens on file in the FDL library," and because there was no physical evidence of page or photograph substitution or of alterations in biographic data. See A.R. 115. The IJ also noted that the United States Embassy would issue a travel visa only if there was credible verification of Gyamtso's identity.

Gyamtso argues that he provided persuasive evidence of his own identity and citizenship. However, the IJ and BIA plausibly questioned the validity of the Chinese household register because it could not be authenticated by the FDL and because the registration number contained too many digits for household registers that were issued prior to October 1999. The FDL Report upon which the IJ reasonably relied, stated that the Tibetan Green Book could not be authenticated.

Gyamtso argues that, by holding that he was a citizen of India, the IJ and BIA reasoned erroneously that India had extended him, as a Tibetan refugee, an offer of firm resettlement, or permanent legal status in India. See Appellant's Brief, 16-17. The IJ ruled that the valid passport and visa showed that he was a native of India, not a native of Tibet. At best, Gyamtso's documentary evidence created a question about his name, nationality, and citizenship. The burden was on him to resolve the question of his identity, which he failed to do. See 8 C.F.R. § 1208.13(a); Osorio v. I.N.S., 18 F.3d 1017,

it in its opening brief, and for those purposes, a passing reference to an issue ... will not suffice to bring that issue before this court." Laborers' Int'l Union v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994) (citation and quotation omitted).

1021-22 (2d Cir. 2004).

Accordingly, the identity finding is supported by substantial record evidence and is dispositive of Gyamtso's asylum claim.  As Gyamtso is not able to make out an asylum claim, he necessarily is unable to satisfy the higher standard required to succeed on his claims for withholding of removal and for relief under the CAT because they rest on the same factual predicate.

For the foregoing reasons, we will deny the petition for review.