

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-30-2009

# Liu v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3294

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Liu v. Atty Gen USA" (2009). *2009 Decisions.* Paper 1967.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1967

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-3294

YONG WEI LIU,
 Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
 Respondent

PETITION FOR REVIEW OF A DECISION OF
THE BOARD OF IMMIGRATION APPEALS
Agency No. A96-009-449
Immigration Judge: Hon. Charles Honeyman

Submitted Under Third Circuit LAR 34.1(a)
January 15, 2009

Before: SLOVITER, BARRY, and SILER, JR.,[*] Circuit Judges

(Opinion Filed: January 30, 2009)

OPINION

---

[*]  The Honorable Eugene E. Siler, Jr., Senior Circuit Judge, United States Court of
Appeals for the Sixth Circuit, sitting by designation.

PER CURIAM

Yong Wei Liu is a native and citizen of the People's Republic of China. He entered the United States from Mexico in August 2002. In December 2002, the Government charged him as removable as an alien not admitted or paroled into the United States. Liu conceded removability but sought asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

In his application and in his testimony before the Immigration Judge ("IJ"), Liu claimed persecution on the basis of his participation in an underground church in China and his evasion of arrest for church activities. The IJ denied Liu's application. Although the IJ believed Liu's explanation of how and when he arrived in the United States, the IJ otherwise made an adverse credibility finding based on a birth certificate issued when Liu was in hiding in China, a minor inconsistency about the date of the underground church incident (although the IJ acknowledged that the inconsistency could be a translation error), and the implausibility of Liu's escape from police. Allowing that "a reviewer of [the] record could conceivably conclude, unlike [the IJ], that [the credibility concerns] are not sufficiently substantial to justify an adverse credibility finding," R. 36, the IJ went on to state that the credibility concerns at least raised the question of whether Liu had adequately corroborated his claim.

The IJ was not troubled by the absence of corroboration as to when Liu arrived in the United States, finding his testimony credible on that point. However, the IJ concluded

2

that Liu's wife should have testified to corroborate his claim because she knew what happened to him in China and visited him while he was in hiding there. The IJ did not accept Liu's explanation that it would be too emotionally trying for her to testify because she was five months pregnant. The IJ concluded that even if all credibility doubts were resolved in Liu's favor, Liu had not met his burden to show past persecution because he failed to corroborate the "core of his claim" (and "not just [his] religious affiliation"). R. 39. The IJ acknowledged that Liu had produced letters from his parents, his cousin, and his pastor, and noted that in many cases it would be unreasonable to expect additional corroboration, but believed it was reasonable to expect Liu's wife to testify. The IJ concluded that without her testimony, Liu had not met his burden to qualify for asylum. The IJ likewise concluded that Liu did not meet the higher standard for withholding. The IJ separately rejected the CAT claim, concluding that there was insufficient evidence that Liu would face torture on his return to China because of how he left the country. Liu appealed to the Board of Immigration Appeals ("BIA"). In a short order, the BIA adopted and affirmed the IJ's decision.

Liu petitions for review. He argues that the IJ and the BIA erred in finding that he failed to demonstrate a well-founded fear of persecution based on his religious beliefs and the altercation with the police officers. He contends, as well, that the IJ substituted his personal beliefs for evidence and claims not only that there was no basis for an adverse credibility finding, but that the absence of his wife should not have been used as a basis

3

for a negative credibility finding. He asks that this matter be remanded for further proceedings on his asylum, withholding, and CAT claims.[1]

Because the BIA relied on the IJ's reasoning, the decisions of the BIA and the IJ both must be considered. See Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). We review questions of law de novo, see Gerbier v. Holmes, 280 F.3d 297, 302 n.2 (3d Cir.

---

[1] In opposing Liu's petition, the Government argues we do not have jurisdiction to review the agency decisions on Liu's withholding and CAT claims because Liu did not present arguments about them to the BIA. In his brief to the BIA, Liu largely challenged the IJ's credibility determination, R. 6-11, which underpinned the asylum and withholding decisions, if not the rejection of the CAT claim. In any event, the BIA considered and rejected all three species of claims (concluding that Liu did not show a "well-founded fear of future persecution" or that "he will more likely than not face persecution or torture upon return to the People's Republic of China.") R. 2. Accordingly, we have jurisdiction to review the decision on the asylum, withholding, and CAT claims. See Lin v. Attorney Gen. of the United States, 543 F.3d 114, 126 (3d Cir. 2008).

In the alternative, the Government argues that Liu waived his claims relating to withholding and CAT relief because he did not raise them in his opening brief except to mention that he would like his case remanded for "further prosecution of [his] prayer for relief of asylum, withholding of removal, and protection from removal under the CAT" Appellant's Brief 12. Although Liu's arguments relating to the credibility determination remain equally applicable to the decision on the withholding claim, he focused on the analysis of a well-founded fear of persecution and did not specifically extend his arguments to the withholding claim in his brief (save for the brief mention already discussed). Accordingly, Liu waived his claims relating to withholding and CAT relief. See Voci v. Gonzales, 409 F.3d 607, 610 n.1 (3d Cir. 2005).

The Government also notes that Liu does not cite to the administrative record in compliance with our Local Rule and provides a reference to cases in which courts sanctioned parties for failure to comply with federal rules. While we will not penalize Liu for his counsel's failure to cite the administrative record in this case, we advise counsel to more carefully support his factual assertions with references to the relevant record in the future. See L.A.R. 28.3(c).

2002), and we review factual findings for substantial evidence, see Butt v. Gonzales, 429 F.3d 430, 433 (3d Cir. 2005).

The IJ first rejected Liu's claim as to the adverse credibility determination. Like other factual findings, an adverse credibility determination must be afforded substantial deference, so long as it is supported by sufficient, cogent reasons. See Butt, 429 F.3d at 434. We must evaluate whether the credibility determination was "appropriately based on inconsistent statements, contradictory evidences, and inherently improbable testimony . . . in view of the background evidence on country conditions." Chen, 376 F.3d at 223.

In part, the credibility determination is built on uncertain fundament. Liu's recitation of the police attack for underground church activities remained the same throughout the immigration proceedings. There is the minor factual inconsistency identified by the IJ in the record – the May 6, 2002 date cited by Liu's cousin in a letter (which, as the IJ noted, could be a translation error).[2] Such a minor inconsistency alone would not merit the adverse credibility determination. And the other basis for the IJ's conclusion – the implausibility of Liu's escape – does not provide much support because it may have been based on an error and otherwise borders on speculation. The IJ mischaracterized Liu's testimony when he reported that Liu stated that he escaped by the front door, R. 24; Liu maintained that he left by the back door. The IJ also wondered how

---

[2]   There is a second that went undiscussed – the date Liu cited at one point in his testimony as the day before he left China (August 25, 2006, instead of August 5, 2006).

Liu managed to escape arrest after hitting a police officer in a scuffle, but Liu's testimony about his escape was not inherently improbable. According to Liu, his father interfered with efforts to capture him, and the police were outnumbered by the church members, all of whom were involved in the argument. As the IJ noted, Liu also got away from the officers despite falling twice, but, from his testimony, he appeared to have at least a small lead on the officers on leaving his house, and he was a young man familiar with the landscape.

The third basis for the credibility finding raises some doubts about Liu's account. The date of issuance of the birth certificate is curious. Liu could not explain why it had been issued when he was in hiding. R. 150-53. Why would Liu risk obtaining a notarized birth certificate from the Chinese government while he was in hiding? Was Liu trying to hide from the IJ his own efforts to get his birth certificate in advance of his departure from China? Or was Liu dissembling when he stated that someone else obtained it and a young boy brought it to the country because Liu wanted to hide the fact that he had submitted a fraudulent document, as the IJ suggested? The notarization date on the birth certificate appears to be contradictory evidence in support of the IJ's finding. However, the date of issuance does not go to the heart of Liu's claim, which is his claim of past persecution based on underground church activities.[3] (It may nonetheless

---

[3] The REAL ID Act changed the standard for credibility determinations, allowing an IJ to make an adverse credibility determination "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." See 8 U.S.C. §

undermine a claim of future persecution, as it suggests the possibility that Liu was not in hiding.)

Considered together, the current bases for the credibility finding fall short of being sufficient, cogent reasons. The IJ suspected as much, R. 36, so he tried to fortify his decision by concluding that even if Liu had been a credible witness, he had not properly corroborated his claim. However, the IJ's request for corroboration was not reasonable under the circumstances.

"In general, it is reasonable to expect an applicant to corroborate facts which are central to his or her claim and easily subject to verification." Kayembe v. Ashcroft, 334 F.3d 231, 238 (3d Cir. 2003) (citations omitted). Liu provided corroboration of the facts central to his claim (the letter from his parents, for example). The IJ, however, wanted Liu's wife to testify. The IJ explicitly decided not to "comment on what the wife might have testified to," but based his alternative conclusion that Liu could not meet his burden to show eligibility for asylum based on the "evidentiary gap" caused by the absence of Liu's wife's testimony. R. 40. However, although his wife was admittedly close to the hearing site and could have appeared (albeit pregnant), she was not privy to facts central to Liu's claim of past persecution. Although she knew Liu had been in hiding, she was not present when the police arrived at the underground church service. Perhaps she could

1158(b)(1)(B)(iii). However, the changes relating to credibility determinations became effective prospectively on May 11, 2005, so they do not apply to Liu's earlier filed case. See 8 U.S.C. § 1158 note (Effective and Applicability Provisions, 2005 Act).

7

provide information about the possibility of future persecution, but she could not provide details about any past persecution, which seemed to be the focus of the IJ's analysis. Without those details, it is difficult to see how she could have been "a star witness," as the IJ concluded. R. 39.

We do not comment on whether Liu should ultimately succeed on his claim for asylum. However, because of the infirmities in the credibility and corroboration analysis, we will grant the petition for review. We will vacate the BIA's order and remand this matter to the BIA for further proceedings consistent with this opinion.