

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-14-2009

# Wu v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2700

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Wu v. Atty Gen USA" (2009). *2009 Decisions.* Paper 1546.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1546

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-2700

GUANG WU,
Petitioner
v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A98-593-601)
Immigration Judge: Honorable Miriam K. Mills

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 8, 2009

Before: FUENTES, WEIS and GARTH, Circuit Judges

(Opinion filed: April 14, 2009)

OPINION

PER CURIAM.

Guang Wu petitions for review of a Board of Immigration Appeals ("BIA")

decision dismissing his appeal of the Immigration Judge's ("IJ") decision denying his

applications for relief from removal. We will deny the petition for review.

Wu is a native and citizen of China who came to the United States in 2004. Shortly after his arrival, the Immigration and Naturalization Service issued a notice to appear charging that Wu is subject to removal because he is present in the United States without having been admitted or paroled. Through counsel, Wu conceded that he is removable as charged. Wu applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").

In support of his applications for relief from removal, Wu testified that he began practicing Falun Gong in 2000. He stated that in August 2003 he went to Beijing to pray for Falun Gong practitioners who had been arrested by the Chinese government. Wu stated that during the gathering, which was attended by 20 to 30 people, approximately ten police cars arrived. Wu testified that, along with other participants, the police handcuffed him, placed him in a police car, and detained him. Wu further testified that, after he was arrested, the police questioned him and forced him to take off his clothes. Wu stated that the police hit him with sticks and deprived him of food. After one week, the police released him.

Wu stated that an officer accompanied him en route to his hometown of Fuzhou, but before they arrived, he ran away by climbing through a window in the train restroom. Wu explained that he was afraid that the police would arrest him when he got home. Wu hid at a friend's house until he left China. Wu's parents told Wu that the police came to their house and told them that he must report to the police when he

2

returned home, and that the police watched their home. Wu further testified that in 2005 he learned that one of his friends with whom he was arrested in Beijing was arrested at home and beaten up. He stated that his friend had to pay a lot of money to get out of jail.

Wu also testified about the principles of Falun Gong and how it is practiced. He stated that he is afraid to return to China because the Chinese government still persecutes Falun Gong practitioners. Wu further testified that he works at a Chinese restaurant in New Jersey, and that he often stays at an apartment rented by his boss. Wu stated that, when he is not at that apartment, he stays with friends in Philadelphia. On cross-examination, Wu stated that he did not remember the address where he stays in Philadelphia.

The Government pointed out on cross-examination that the immigration officer at the border stated in a summary of his questioning of Wu that Wu came to the United States to seek employment, and that Wu did not fear returning to China. Wu denied that he made such statements, and stated that he had difficulty communicating without an interpreter. The Government also noted that Wu stated that he was arrested on August 8, 2003, but that a letter written by his friend stated that the date of arrest was August 6, 2003. Wu stated that he believed that August 8, 2003, was the correct date, and that the other statement was wrong. In addition, the Government noted that Wu stated in his affidavit that he was arrested with the two friends that he had traveled with to Beijing, but he testified that one of those friends was not arrested. Wu explained that, when he filled out his asylum application, he believed that both friends were arrested, but he did

3

not call China to confirm the information. Wu stated that, after the application was submitted, he learned that only one of his friends was arrested. Wu's friend, Ling Yong Feng, submitted a letter stating that he was not arrested.

The IJ denied Wu's applications for relief from removal. The IJ found that Wu provided no persuasive evidence that he ever practiced Falun Gong in China or in the United States because he did not provide corroborative evidence that the court would reasonably expect. The IJ noted that Wu did not reasonably explain why none of the lawful permanent resident people with whom he lives in the United States, and whom he testified had observed his Falun Gong practice, provided written or verbal testimony on his behalf. The IJ stated that such corroboration was necessary because Wu was not credible. The IJ found that Wu could not reasonably explain why the immigration officer stated that he came here to seek employment. Although Wu faulted the use of a computer interpreter, the IJ noted that the rest of the form accurately recorded his information. The IJ did not believe Wu's testimony that the immigration officer never asked him why he came to the United States.

The IJ also stated that Wu failed to reasonably explain the inconsistencies between his affidavit and letters corroborating his arrest regarding the date of the arrest and whether his friend was arrested with him. The IJ found Wu's explanation that he wrote his affidavit before contacting his friends in China not convincing given the small number of people at the demonstration and given that Wu specifically identified his two friends as having been arrested with him. The IJ further noted that Wu established no

4

evidentiary foundation for letters from China purporting to corroborate that Wu was a Falun Gong practitioner.

The IJ concluded that Wu failed to satisfy his burden of proof that he suffered past persecution or that he is currently a Falun Gong practitioner based on the adverse credibility determination and because he failed to submit expected corroborating evidence. The IJ further concluded that, because Wu was not credible, he failed to establish that he was eligible for withholding of removal or relief under the CAT. The IJ noted that the same alleged facts supported these applications for relief.

Wu appealed the IJ's decision to the BIA.[1] The BIA adopted and affirmed the IJ's decision. The BIA stated that the IJ's adverse credibility finding was sufficiently supported by the record, and that Wu had not shown that the finding was clearly erroneous. The BIA explained that there were several bases for the adverse credibility finding, including Wu's statements to the border control agent that he came to the United States to work and that he had no fear of returning to China, and the discrepancies between Wu's asylum application and his documentary evidence regarding his date of arrest and whether he and his friend were arrested together. The BIA noted that Wu did not adequately explain these inconsistencies, and that he did not contest the admission or

---

[1] The record reflects that the attorney who represented Wu before the IJ filed Wu's notice of appeal. After the Pennsylvania Supreme Court temporarily suspended Wu's attorney from the practice of law, the BIA granted the Government's petition to suspend Wu's attorney from practicing before the BIA. Wu retained new counsel, who filed a brief on his behalf.

5

reliability of his statements to the border control agent. The BIA further noted that Wu

had not shown that the IJ erred in determining that he failed to produce readily available

corroborative evidence regarding his practice of Falun Gong. The BIA agreed with the IJ

that Wu did not meet his burden of proof. Wu filed a petition for review.[2]

We review the IJ's adverse credibility determination for substantial

evidence. Chen v. Ashcroft, 376 F.3d 215, 223 (3d Cir. 2004). Under this standard of

review, the adverse credibility determination will be upheld unless a reasonable factfinder

would be compelled to conclude to the contrary. Id.

Wu argues that the discrepancy in the record regarding his date of arrest is

insufficient to support the adverse credibility finding. We agree. However, the

inconsistencies between Wu's description of his arrest in his affidavit and his testimony

and the description given by his friend, Ling Yong Feng, constitute substantial evidence

supporting the adverse credibility finding. Wu stated in his affidavit that he went to

Beijing with Ling Yong Feng and Zheng Yan. In describing his arrest, Wu stated that

"before we could do anything the police had surrounded everybody including us. Some

Falun Gong practitioners, including Lin Yongfeng[sic], Zheng Yan and me, were

_____

[2] We previously granted the Government's unopposed motion to remand the matter to the BIA to address the burden of proof provisions of the Real ID Act of 2005. On remand, the BIA concluded that, under the standards set out in the Real ID Act, the IJ's findings that Wu failed to testify credibly, failed to submit reasonably available corroborating evidence, and failed to meet his burden of proof were supported by the record. The BIA referred to its prior decision for examples of the inconsistences in the record supporting the adverse credibility finding.

6

apprehended and put in police cars and trucks. That same day we were sent to a detention center." A.R. at 286-87. Wu, however, submitted a letter from Ling Yong Feng in which Feng stated that he ran away when the police arrived, and that he escaped. Wu also testified that Ling Yong Feng ran away. A reasonable factfinder would not be compelled to find Wu credible in light of these blatant inconsistencies relating to the event that is the basis of his asylum claim.

Although Wu argues that the IJ did not give him an opportunity to explain the inconsistencies, the record reflects that Wu had several opportunities to explain them in response to questions by the IJ and the Government. Wu explained that he wrote his affidavit before speaking to his friends. The IJ, however, found this explanation unconvincing given the small number of people at the demonstration and Wu's specific statement that he was arrested with Ling Yong Feng. Wu further argues that the IJ impermissibly speculated that he would know that his friend was arrested given the relatively small number of people at the gathering. Even if this were true, the fact remains that Wu stated that Ling Yong Feng was arrested, which is simply not true.[3]

We also find no error in the conclusion of the IJ and BIA that Wu failed to provide reasonably available corroborating evidence of his practice of Falun Gong from

---

[3] We agree with the Government that this inconsistency is sufficient to support the adverse credibility finding. We thus need not address Wu's arguments that the BIA erred in relying on his statements to the border control agent, and that the IJ erred in finding that he failed to provide a foundation for letters he received from China. As recognized by the BIA, we note that Wu did not challenge the reliability of his statements to the border control agent in his appeal to the BIA.

the people with whom he lives in the United States.  When given the opportunity to explain the absence of such evidence, Wu first stated that these individuals did not have time to provide a letter on his behalf.  He also stated that his lawyer did not ask him to get a letter.  Although Wu told the IJ that he could get letters from people who have seen him practice Falun Gong, his lawyer did not request to supplement the record.  Under the Real ID Act, no court shall reverse a determination with respect to the availability of corroborating evidence unless the court finds that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable.  Toure v. Attorney General, 443 F.3d 310, 325 (3d Cir. 2006).  In light of Wu's explanation, a reasonable trier of fact is not compelled to conclude that corroborating evidence of his practice of Falun Gong in the United States is unavailable.

As Wu failed to meet his burden of showing that he is eligible for asylum and withholding of removal, we will deny the petition for review.[4]

---

[4] Wu did not challenge in his appeal to the BIA the IJ's finding that he failed to provide corroborating evidence of his practice of Falun Gong.  Because the BIA sua sponte addressed this finding, we have jurisdiction to consider Wu's argument.  See Lin v. Attorney General, 543 F.3d 114, 123 (3d Cir. 2008).  We agree with the Government, however, that Wu did not exhaust his administrative remedies with respect to his CAT claim.  See id. at 120-21.