**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2118
_____

HENG CAI CHEN,
                    Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                    Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A094-799-621)
Immigration Judge:  Honorable Eugene Pugliese

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 24, 2010

Before:  AMBRO, CHAGARES and ALDISERT, Circuit Judges

(Opinion filed: July 6, 2010)
_____

OPINION
_____

PER CURIAM

        Petitioner, Heng Cai Chen, seeks review of the Board of Immigration Appeals'

("BIA") final order of removal.  For the following reasons, we will deny his petition.

Chen, a native and citizen of China, entered the United States on August 18, 2006. Chen stated that he left China to seek asylum for two reasons: (1) the mayor of his village tried to force him to marry his daughter, causing him to run away from his village; and (2) he suffered religious persecution shortly before he left China.

On April 19, 2007, Chen filed an asylum application on the basis of his political opinion and religion. At a credible fear interview, Chen stated that the chief of his village approached him and asked him to marry his daughter in June 2005. Chen fled and took a job in Fuzhou City with an individual who introduced him to Catholicism. In an affidavit attached to his statement, Chen stated that in December 2005 he was baptized by a pastor of the Roman Catholic Church. While in Fuzhou City, he attended an informal bible study meeting where he was arrested and detained by the authorities for 48 hours, who allegedly beat him by holding a book on his chest and using a hammer to hit the book. When asked by his credible fear interviewer who the Pope was, Chen responded that he did not know.

In January 2008, Chen testified at a hearing before an immigration judge. Chen stated that, after he refused to marry the mayor's disabled daughter in June, the mayor threatened to have the police investigate him and his family because they were Catholic. When he went to live in Fuzhou City, he was brought to an underground Catholic church where he and thirty church members were arrested at an illegal church meeting at the end

of 2005. He discussed how the authorities assaulted him, but admitted that he was not physically injured and did not seek a doctor or treatment after he was released. He stated that before leaving China, he was baptized. Once he arrived in the United States, he attended a church in New York about once a week.

On cross-examination, Chen stated that he always attended a registered Catholic church with his family, but he could not provide the name of the church or the name of a person who ran it. Chen was asked why he waited until December 2005 to be baptized, and after the question was repeated, there was a long pause, and Chen responded that he did not realize the importance of baptism until he attended the underground church. When questioned directly by the IJ, Chen had difficulty identifying what the sacraments were. His attorney attributed his misunderstanding to Chen's translator, even though the IJ emphasized the importance of his own translator properly translating issues relating to his religion. He explained that he could not identify the Pope at his credible fear interview because he was too nervous or misunderstood him. He also testified that the current Pope resides in the United States.

In his decision, the IJ found that Chen was not credible, had inconsistent testimony, and had not sufficiently corroborated his case. The IJ specifically noted that Chen's demeanor was that of a person who did not know the answer to many of the questions and who often paused to gain more time to think of an answer. Relying on Chen's inability to answer key questions about Catholicism, his contradictions between

3

his testimony and statements to the asylum officer, and that he was otherwise vague when discussing details about the practice of his religion, the IJ denied all relief.

Chen appealed to the BIA, who affirmed the IJ's decision. Although the BIA noted that Chen sufficiently explained one inconsistency in his appeal, his failure to reconcile numerous others and his lack of corroborative evidence led the BIA to conclude that the IJ's adverse credibility determination was not clearly erroneous. The BIA also found that Chen had failed to meet his burden of proof. Accordingly, the BIA affirmed the IJ's finding that Chen failed to prove eligibility for asylum or withholding of removal, and CAT protection. Chen now petitions for review of the BIA's order.

II.

We have jurisdiction to review the BIA's final order of removal pursuant to 8 U.S.C. § 1252(a)(1). See Abdulai v. Ashcroft, 239 F.3d 542, 548 (3d Cir. 2001). When, as in this case, the BIA substantially relies on the findings of the IJ, we review the decisions of both the BIA and the IJ. See Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004). We review these findings, including any credibility determinations, under a substantial evidence standard. See Cao v. Att'y Gen., 407 F.3d 146, 152 (3d Cir. 2005). An adverse credibility finding must be upheld unless "any reasonable adjudicator would be compelled to conclude to the contrary." Berishaj v. Ashcroft, 378 F.3d 314, 322 (3d Cir. 2004) (quoting 8 U.S.C. § 1252(b)(4)(B)). Because Chen filed his asylum application after the enactment of the REAL ID Act, the inconsistencies, inaccuracies, or

4

falsehoods upon which the adverse credibility finding is based need not go the heart of her claim. See Lin v. Att'y Gen., 543 F.3d 114, 119 n.5 (3d Cir. 2008). Rather, the REAL ID Act permits credibility determinations to be based on observations of Chen's demeanor, the plausibility of his story, and on the consistency of his statements. See 8 U.S.C. § 1158(b)(1)(B)(iii); Gabuniya v. Att'y Gen., 463 F.3d 316, 322 n.7 (3d Cir. 2006).

We conclude that Chen is ineligible for asylum because the adverse credibility determination is well supported by substantial evidence in the record. Chen's testimony is replete with inconsistencies, and Chen fails to adequately explain these inconsistencies in his brief. For example, Chen does not explain why he never told the asylum officer during the credible fear interview that the mayor threatened him because of his and his family's religion. In his earlier statements to the asylum officer, Chen stated that he joined the Catholic Church before he left China in December 2005, and all of his responses to the asylum officer about his Catholicism have to do with the time period in December 2005 and after. He never disclosed to the asylum officer that he had any contact with Catholicism before late 2005, even when he was directly questioned on those issues. It was not until Chen's hearing before the IJ that he changed his story to connect the incident with the mayor to his practice of Catholicism, stating that the mayor "would accuse me of being a member of that illegal church and ask the police to come arrest me." (AR 116.)

In his brief, Chen attempts to argue that it was obvious that the mayor threatened him because his Catholic religion. This assertion is made without pointing to any evidence in the record. In addition, when reviewing his hearing testimony, Chen stated that he was not at risk for attending a government-registered church with his family. Chen also fails to explain how the mayor could have threatened to have him arrested in June 2005 for attending an illegal church, when the first time he came into contact with an illegal church was December 2005, months after he fled the village. Chen also does not explain how he appeared to know very little about the Catholic religion, as demonstrated by his incorrect response for where the Pope resides and his confusion over the sacraments. Rather, he argues that the IJ's questions were opaque or that doctrinal knowledge is insufficient to deny Chen relief. Coupled with Chen's material inconsistencies, his inability to answer basic questions about Catholicism casts doubt on his credibility and the veracity of his claims.

Chen also argues in his brief that the IJ's finding regarding his demeanor is inaccurate. This Court must accord an even greater degree of deference to personal observations of demeanor by an IJ, who is in the unique position to observe testimony, candor, and responsiveness, especially when this inference is supported by specific and cogent reasons for doubting the veracity of the testimony. Dia v. Ashcroft, 353 F.3d 228, 252 n.23 (3d Cir. 2003) (en banc); see also REAL ID Act § 101(a)(3)(iii), codified at 8 U.S.C. § 1158(b)(1)(B)(iii). Here, the IJ specifically noted that Chen's demeanor was:

6

> [S]uggestive of someone who is extremely uncomfortable being here, testifying, who does not really know the answers to many of these questions, who pauses long and hard between many of the questions that were asked him, who frequently asked questions to be repeated in the Court's view simply to get more time, it being the case that there was no difficulty in him understanding the translator or the translator understanding him, at least so far as our translator, Josephine Chen, told us, during the course of today's hearing.

(AR 68.) The transcript of the hearing indicates that Chen was not responsive to questions, some of which were repeated. The IJ noted for the record on two specific occasions when Chen paused for a lengthy time and could not answer questions that could be answered if he were telling the truth. Accordingly, given our review of the record, we agree that Chen's demeanor combined with his inconsistencies provide a sufficient basis to support an adverse credibility determination.

We also find no error in the conclusion of the IJ and BIA that Chen failed to provide reasonably available corroborative evidence. Under the REAL ID Act, where testimony alone is not sufficient to sustain a burden of proof, corroborating evidence "must be provided unless that applicant does not have the evidence and cannot reasonably obtain the evidence." 8 U.S.C. § 1158(b)(1)(B)(ii); see also Chukwu v. Att'y Gen., 484 F.3d 185, 191-92 (3d Cir. 2007). Chen failed to provide any witnesses from his church in the United States, despite the close proximity of the church to the hearing location. The documents he submitted from China were unauthenticated and the letters he included did not demonstrate any first-hand knowledge. Chen's argument in his brief that the immigration judge should "telephone church leaders," and faulting the IJ for not

7

instructing him on proper documentation, clearly demonstrates a misunderstanding of Chen's burden of proof and REAL ID Act provisions.  See 8 U.S.C. § 1158 (b)(1)(B)(ii).

For these reasons, we agree with the negative credibility finding based on Chen's demeanor and the inconsistencies in his story.  We also agree that he failed to provide corroborating evidence.  Accordingly, the petition for review is denied.