**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4395
_____

DAO QING YE,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A073-165-866)
Immigration Judge: Honorable Margaret Reichenberg

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 15, 2010
Before:  SCIRICA, SMITH AND WEIS, Circuit Judges
(Opinion filed:  September 22, 2010)
_____

OPINION
_____

PER CURIAM.

Dao Qing Ye seeks review of the Board of Immigration Appeals' ("BIA")

final order dismissing his appeal of the Immigration Judge's ("IJ") denial of asylum,

withholding of removal, and relief under the Convention Against Torture ("CAT").  We

1

will deny the petition.

## I.

Ye, a native and citizen of China, entered the United States in May 1992 without inspection. In August 1993, he filed an application for asylum. In support of the application, Ye attached an addendum in which he stated that after his wife gave birth to their second child in China, he was forcibly sterilized.

In August 1996, Ye was placed in removal proceedings after an Order to Show Cause and Notice of Hearing ("OSC") was filed, charging him with removability pursuant to INA § 241(a)(1)(B). At a January 1996 hearing, Ye, through counsel, admitted the factual allegations in the OSC and conceded removability. At that hearing, Ye indicated that he wished to proceed under the asylum application that he filed in August 1993, wherein he sought asylum and related relief.

At a hearing in April 1998, Ye withdrew his 1993 asylum application and sought voluntary departure, which the IJ granted. Ye remained in the United States, however, and in January 2007 he filed a motion to reopen, seeking reconsideration of his asylum application. In the motion, Ye again submitted an affidavit claiming that he had been forced to undergo "male sterilization" after his wife gave birth to their second child.

The IJ granted the motion to reopen after the Department of Homeland Security ("DHS") did not file an opposition. In November 2007, Ye filed a second application for asylum, withholding of removal, and CAT relief, claiming that he suffered

2

past persecution and has a well-founded fear of future persecution in connection with his wife's forcible sterilization and his own resistence to China's coercive family planning policy. At a merits hearing, Ye testified that following the birth of the couple's second child, his wife was forcibly sterilized and they were fined. In addition, Ye alleged that he was briefly jailed, during which time he was beaten for failing to pay the fine. Ye believes he will be imprisoned upon his return to China for having failed to pay the balance of the fine.

The IJ denied Ye's asylum application after determining that he lacked credibility. The IJ alternatively held that Ye failed to satisfy his burden of proof that he had experienced past persecution for having violated the family planning policy. With regard to Ye's credibility, the IJ determined that there were significant inconsistencies between the information in Ye's earlier administrative filings, namely his 1993 asylum application and 2007 motion to reopen, and his 2007 asylum application and hearing testimony. Specifically, Ye alleged in his 2007 asylum application (and testified to the same) that it was, in fact, his wife who had been forcibly sterilized following the birth of the couple's second child. However, as mentioned, in Ye's previous filings, he alleged that he had been sterilized.

When questioned by the IJ about the inaccurate information in his previous filings, Ye claimed that his first attorney had included the false information in his 1993 application unbeknownst to him and, because it had not been translated for him at the

time, he was unaware of the error. Ye did acknowledge, however, that in 1998 a friend translated the 1993 application for him and he learned, for the first time, that it contained inaccurate information. Ye also acknowledged that he did not attempt to correct the information at that time. Instead, in his 2007 motion to reopen Ye again alleged that he had been sterilized. When asked during his administrative hearing why he repeated the false claim, Ye stated that his 2007 motion to reopen had been prepared by a different attorney who, at some point, handed his case off to a non-attorney. Ye claimed that he signed the motion without reading the contents because he believed that it represented his true claim. However, Ye later testified that while the motion was pending, he became aware that the motion contained inaccurate information but opted not to amend it.

Ye filed a timely appeal with the BIA and, in an October 2009 decision, the BIA affirmed both the IJ's adverse credibility ruling and her alternative holding that Ye failed to establish a claim of past persecution. Following the BIA's dismissal of his appeal, Ye filed a timely petition for review in this Court.

## II.

This Court has authority to review final orders of removal. See 8 U.S.C. § 1252(a). "[W]hen the BIA both adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we have authority to review the decisions of both the IJ and the BIA." Chen v. Ashcroft, 376 F. 3d 215, 222 (3d Cir. 2004). We review agency factual determinations for substantial evidence, and will uphold such determinations

4

"unless the evidence not only supports a contrary conclusion, but compels it." Zhang v. Gonzales, 405 F.3d 150, 155 (3d Cir. 2005) (internal citations omitted). We will disturb the BIA's adverse credibility determination only if "any reasonable adjudicator would be compelled to conclude to the contrary." Lin v. Att'y Gen., 543 F.3d 114, 119 (3d Cir. 2008). Because Ye filed his first asylum application prior to the effective date of the REAL ID Act, the inconsistencies on which the BIA relied "must not be 'minor' and must go to the heart of [his] claim." Id.

Substantial evidence supports the BIA's adverse credibility determination. The BIA identified two deficiencies that it deemed collectively sufficient to supported the IJ's credibility ruling. First, the BIA relied upon the inconsistencies between Ye's 1993 asylum application and 2007 motion to reopen, and his subsequent asylum application and hearing testimony. The BIA noted that Ye knew of the false claim in his 1993 application as early as 1998, yet proceeded to file a counseled motion to reopen repeating the same inaccuracy.[1] As the IJ explained, even if the inaccuracy in Ye's 1993 asylum application may be excused due to his inexperience with the immigration progress, his subsequent filing could not be given the same benefit of the doubt. The BIA further determined that Ye's proffered explanations for the discrepancies, including his lack of proficiency in

---

[1] Although Ye argues that "the record is clear that [he] was not represented in his motion to reopen," see Pet. Br. at 22, we agree with the Government that the record suggests otherwise. Counsel's name appears on the motion to reopen, on the certificate of service, and Ye testified that a lawyer prepared the document, but that he later returned to China. (See Joint Appendix ("J.A.") at 451, 199).

5

English, were not valid, particularly because Ye was represented by counsel, at some point, in both instances.

Second, the BIA relied upon the inconsistency between Ye's hearing testimony and his 2007 asylum application. On cross-examination, Ye testified that following his wife's sterilization, police detained him for three days, during which time he was handcuffed to a chair, slapped, and pushed, such that he required stitches. However, in his asylum application, he failed to indicate that he received any medical treatment as a result of the alleged physical abuse. Similarly, letters from Ye's wife and brother fail to describe any mistreatment that Ye suffered during the three-day detention.

Although Ye argues that the IJ and BIA failed to consider his "plausible explanations" for his filing of false information in his motion to reopen, see Pet. Br. at 20, the record does not support such a conclusion. As mentioned, the BIA explicitly noted that Ye's "lack of English proficiency is not a valid explanation where [he] was represented by counsel on both occasions." (J.A. at 3.) We find no error in the decision not to credit Ye's explanations. Although Ye claims that he was wholly unaware of the contents of his previous filings, we do not find it plausible that Ye would not have made a concerted effort to clarify the facts supporting his motion to reopen after having realized in 1998, that his first asylum application contained the inaccurate claim that he had been sterilized.

Ye also argues that his omission from his 2007 asylum application that he

6

had been significantly harmed during his earlier detainment, should not have been used to "impugn" his credibility. See Pet. Br. at 23. He cites several cases which support the proposition that an alien need not provide every detail of his claim to be deemed credible. See, e.g., Senathirajah v. INS, 157 F.3d 210, 221 (3d Cir. 1998) ("Minor inconsistencies in the record such as discrepancies in dates which reveal nothing about an asylum applicant's fear for his safety are not an adequate basis for an adverse credibility finding."); Secaida-Rosales v. INS, 331 F.3d 297, 308 (2d Cir. 2003) (explaining that outright inconsistencies and omissions must be measured against the whole record before they may justify an adverse credibility determination).

However, in reviewing the omission in Ye's case, the BIA appropriately cited our decision in Xin Jie Xie v. Ashcroft, 359 F.3d 239, 243 (3d Cir. 2004), wherein we held that the omission of a key event from an asylum application may support an adverse credibility finding. We note that Ye does not dispute the BIA's finding that the omission in his case is material. Moreover, none of the cases that he cites suggests that one may omit a material claim from an asylum application and still be deemed credible. Accordingly, we agree with the BIA that Ye's omission is material, as it goes to the heart of his claim of past persecution.

Even assuming that Ye was credible, the record does not compel the conclusion that he established his persecution claim. As an initial matter, we agree with the BIA that, to the extent Ye relied on his wife's experiences to support his asylum

claim, he is not eligible for relief. See Lin-Zheng v. Att'y Gen., 557 F.3d 147, 157 (3d Cir. 2009) (en banc). However, spouses remain eligible for relief if they can establish their own persecution for resisting China's coercive reproductive policy or a well-founded fear of future persecution for that resistance. See 8 U.S.C. § 1101(a)(42). We agree with the BIA that Ye is unable to make such a showing.

Ye argues that the cumulative impact of being fined, detained, beaten, and having his property seized, rose to the level of persecution. See Pet. Br. at 25-27. However, there is no indiction that the economic restriction imposed upon him was so severe as to constitute persecution.[2] See Li v. Attorney General, 400 F.3d 157, 168 (3d Cir. 2005). We also conclude that Ye's three-day detention and the confiscation of some of his personal property do not amount to persecution. See Lukwago v. Ashcroft, 329 F.3d 157, 168 (3d Cir. 2003) (Persecution includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a real threat to life or freedom" and does not "include all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional."). In sum, we agree with the BIA that Ye, who has the burden of establishing his eligibility for asylum, see 8 C.F.R. § 208.13(a), has not met that

_____

[2] Ye indicated that a fine of 5000 RMB had been imposed, but that it had been partially paid by his brother. Notably, although Ye argues that he will likely be jailed upon his return to China for having failed to pay the outstanding balance, he admitted that he has sent no money back to his wife and children to pay the fine despite having worked in the United States since, at least, 2002. Furthermore, Ye admitted that his family has remained in China unharmed, despite the unpaid balance.

8

standard.

As Ye did not meet his burden of proof on his asylum claim, his claim for withholding of removal necessarily fails. See Yu v. Att'y Gen., 513 F.3d 346, 349 (3d Cir. 2008). We also conclude that the BIA did not err when it concluded that Ye had not established a basis for relief under the CAT, as he did not demonstrate that it is more likely than not that he would be tortured upon his return to China.

We will deny the petition for review.