**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1237
_____

M.H.B.,

Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,
Respondent.
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A089-249-787)
Immigration Judge:  Honorable Susan G. Roy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 9, 2011

Before:  SCIRICA, SMITH and JORDAN, *Circuit Judges*.

(Filed : November 14, 2011)
_____

OPINION
_____

PER CURIAM

    M.H.B.[1] petitions for review of an order of the Board of Immigration Appeals

(BIA) affirming the decision of an Immigration Judge (IJ) denying asylum, withholding

_____

    [1] On April 15, 2011, we granted petitioner's motion requesting that the Court refer

of removal, and relief under the Convention Against Torture (CAT). For the reasons detailed below, we will deny the petition for review.

M.H.B., a citizen of the Republic of Chad, was admitted to the United States in 2007 as a nonimmigrant student. After attending university for a short time, he filed an application for asylum, withholding of removal, and CAT relief. The Department of Homeland Security charged him with being removable under section 237(a)(1)(C)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(1)(C)(i), as a nonimmigrant who had failed to comply with the conditions of his status.

At a hearing before an IJ, M.H.B. testified in support of his claims. He stated that in Chad, he had worked as a computer technician. In October 2006, an employee of the RG — a police department with a reputation for brutality that provides security for the Chadian President — purchased two computers and hired M.H.B. to install them in the RG's building. M.H.B. explained that the computers were to be installed in one room, while the servers were in a second room; located between those two rooms was a third room. M.H.B. decided to thread cables through that third room; however, when he entered the room, he saw four dead bodies on the floor. He quickly closed the door, completed his work, and left the building. Later in the week, he returned to collect his pay. The RG then detained him for nearly three weeks; during that time, he was tortured and interrogated about what he had seen while on the premises. Eventually, his uncle was able to bribe the RG to secure his freedom, and he fled to the United States. M.H.B.

to him and his relatives by only their initials.

conceded removability, but argued that on the basis of those experiences, he was entitled to asylum, withholding of removal, and CAT relief.

The IJ denied all relief to M.H.B.. Central to the IJ's decision was her finding that M.H.B. was not a credible witness; she concluded that M.H.B. had provided inconsistent and implausible testimony. M.H.B. sought review from the BIA, which dismissed the appeal. The BIA found no clear error in the IJ's credibility determination. M.H.B. then filed a timely petition for review in this Court.

We have jurisdiction under 8 U.S.C. § 1252(a)(1) to review the agency's final order of removal. We review agency factual determinations, including credibility findings, under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Because M.H.B. filed his asylum application after May 11, 2005, the provisions of the REAL ID Act governing credibility determinations apply. See Chukwu v. Att'y Gen., 484 F.3d 185, 189 (3d Cir. 2007). Prior to the implementation of the REAL ID Act, minor omissions or inconsistencies that did not go to the heart of an asylum applicant's claim were insufficient to support adverse credibility determinations. See Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002). Under the REAL ID Act, meanwhile, a trier of fact may base a credibility determination on any inconsistencies, without regard to whether they relate to the heart of the alien's claim. See § 1158(b)(1)(B)(iii).

We conclude that substantial evidence supports the agency's decision to reject M.H.B.'s credibility. The BIA's primary basis for this decision concerned an embellishment M.H.B. offered during his testimony about the harm he suffered on the fifth day of his detention. In describing the day in his affidavit, M.H.B. said only that two men came to his room and told him that they were convinced he was guilty. Meanwhile, during the hearing, M.H.B. said that on that day, he was beaten three separate times with a rubber whip. The circumstances of M.H.B.'s alleged confinement are central to his claim that he was persecuted and tortured in Chad, and this discrepancy supports the adverse credibility determination. See Xie v. Ashcroft, 359 F.3d 239, 243 (3d Cir. 2004). While M.H.B. attempted to explain his differing accounts — he first stated only, "[a]ll I know is that it's my story and I'm the one sitting her[e] today and that's what I'm explaining what happened," but then, on follow-up questioning by the IJ, suggested that the omission was the fault of his attorney — given that he began the hearing by swearing that his affidavit was true and correct, it was reasonable for the agency to find his explanation unpersuasive. See id. at 245-46.

The BIA relied on two additional inconsistencies in concluding that M.H.B. lacked credibility. First, in M.H.B.'s affidavit, he stated that on the fourth day of his detention, he was given food and water, while at his hearing, he testified that he was given no food or drink whatsoever on that day. Second, M.H.B. explained in his affidavit that upon arriving in the United States, he had communicated with his Uncle Ab. T. by email and his Uncle Am. T. by telephone. When his counsel asked him during the hearing whether

4

he had had contact with any relatives, on the other hand, he first said, "nobody," but then clarified that he had received only an email from Ab. T (without mentioning Am. T.).[2] These discrepancies, although minor, lend further support to the agency's credibility finding. See 8 U.S.C. § 1158(b)(1)(B)(iii).

Finally, the BIA deferred to the IJ's finding that M.H.B.'s demeanor undermined his credibility. The IJ noted that on cross examination, M.H.B. became frustrated, hesitant, and argumentative. M.H.B. argues that his behavior was natural for a party under cross-examination. However, we accord substantial deference to the IJ's first-hand observations, see Dia v. Ashcroft, 353 F.3d 228, 252 n.23 (3d Cir. 2003) (en banc), and are confident that she could distinguish between the run-of-the-mill discomfort

---

[2] M.H.B. claims that these statements were not inconsistent because they concerned different time periods: his affidavit listed his communications since arriving in the United States, while the question during the hearing asked about his communications since he had been detained. While the question at the hearing concerned a time period that began earlier, and would thus seem to call for his communications with both uncles, M.H.B. argues that because he had previously testified about how Am. T. had secured his freedom, he necessarily had been in contact with him, so he therefore must have interpreted the question to ask whether he had communicated with anyone besides Am T. However, there are problems with this interpretation. Most simply, it inserts words into the question that his counsel did not use. Further, this part of the examination concerned whether M.H.B. could safely communicate with his family after his escape from detention; when M.H.B. listed those communications that he had risked under the circumstances, he could have been expected to include his phone call with Am T. Therefore, although M.H.B.'s interpretation is plausible, we do not believe that the BIA's contrary interpretation was unreasonable. See generally 8 U.S.C. § 1252(b)(4)(B) (providing that "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary").

5

engendered by cross-examination and behavior evincing a lack of credibility, <u>Singh-Kaur</u> <u>v. INS</u>, 183 F.3d 1147, 1151 (9th Cir. 1999).

Based on these findings, we conclude that substantial evidence supports the agency's adverse credibility determination. <u>See</u> <u>Lin v. Att'y Gen.</u>, 543 F.3d 114, 126 (3d Cir. 2008).[3] M.H.B. argues that we should look also to the IJ's opinion; according to M.H.B., some of the reasons the IJ gave for her credibility determination are not supported by the record. However, even if we assume that the IJ did make some errors, those do not affect the result of this case, because the findings discussed above are sufficient to sustain the adverse credibility finding. <u>See</u> <u>Abdulrahman v. Ashcroft</u>, 330 F.3d 587, 597-99 (3d Cir. 2003); <u>see also</u> <u>Husyev v. Mukasey</u>, 528 F.3d 1172, 1183 n.6 (9th Cir. 2008) ("Because we must accept the IJ's adverse credibility finding if any of the supporting grounds proffered in the IJ's decision is valid, we do not reach the IJ's other grounds for discrediting [petitioner's] testimony." (internal citation omitted)).

Accordingly, we will deny the petition for review.

---

[3] Because M.H.B.'s CAT claim was premised on the same allegations as his asylum and withholding of removal claims, this credibility determination is dispositive as to each of his claims. <u>See, e.g.</u>, <u>Guo v. Gonzales</u>, 463 F.3d 109, 114 (2d Cir. 2006).