**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3222
_____

CAI FENG LI,
                    Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                    Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A200-752-593)
Immigration Judge:  Eugene Pugliese
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 13, 2013
Before:  SLOVITER, CHAGARES and GREENBERG, <u>Circuit</u> <u>Judges</u>

(Opinion filed March 21, 2013)
_____

OPINION
_____

PER CURIAM

Cai Feng Li petitions for review of the final removal order of the Board of Immigration Appeals ("BIA"). For the reasons that follow, we will deny the petition for review.

Li is a native and citizen of China. In January 2010, she was admitted to the United States on a nonimmigrant B-1 visa as a visitor for business. She was authorized to remain in the United States until April 24, 2010, but she did not depart by that date. In July 2010, Li applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). She alleged that Chinese family planning authorities forced her to undergo an abortion for violating China's one-child policy. Li's case was referred to an Immigration Judge ("IJ"), and the Government charged her with removability for remaining in the United States longer than permitted (8 U.S.C. § 1227(a)(1)(B)). Li conceded removability.

Li testified in support of her claims at a hearing before the IJ. She stated that she is married and has one child, a son who was born in 1987. Soon after her son was born, her work unit required her to submit to the insertion of an IUD and to have routine medical examinations to verify that she was not pregnant. In 1995, her work unit was shut down, and she and her husband wanted to have another child, so she went to a private hospital to have her IUD removed. In 1996, when Li was two months pregnant, local family planning officials came to her home and forced her to accompany them to the hospital. When her pregnancy was confirmed, medical personnel restrained her to an

2

operating table and aborted her fetus. Li stated that the procedure was painful. Before she left the hospital, the doctor inserted another IUD. When asked at the hearing if she had any proof of the abortion or the IUD checkups that followed, Li stated that the hospital would not issue any certificate, and that the booklet documenting her IUD checkups was taken from her after the records began being stored on a computer. When asked why she waited approximately fourteen years after the abortion to come to the United States, she replied that she didn't find an opportunity to leave. Both her husband and her son remain in China.

The IJ asked Li about her plan in 1995 to have another child. Li answered that no one managed the birth matters after her work unit shut down. When the IJ asked whether Li believed that she could raise the child to adulthood in secret from the birth control officials, Li began trying to explain, but her response faded without a complete answer. The IJ noted on the record that there were pauses in Li's response, and that there was a "kind of stammering and stuttering, and there's really no answer." A.R. 123. The IJ also challenged Li's assertion that she could plan to have a second child so long as she was not working, asking whether she could have as many children as she wanted if her husband were wealthy enough to support her. When Li did not respond, the IJ noted on the record that there was a long pause and no response from Li. The IJ also asked Li about her asylum application, in which she stated that she "was always looking for a chance to leave China" following her 1996 abortion. A.R. 303. Noting that Li's visa was

3

issued in December 2009, the IJ asked her what effort she made before then to obtain a visa to the United States. After initially responding that she had heard about business visas from a friend, she fell silent when pressed for an example of her active efforts, eventually stating only, "I don't know how to say it." A.R. 125. In addition to her testimony, Li submitted a number of documents in support of her asylum application.

The IJ denied all relief, determining that Li failed to satisfy her burden of proof because her testimony was not credible, and because she failed to corroborate her allegations with reasonably available evidence. The IJ also noted that his credibility determination was based not only on Li's demeanor and slowness of responses, but also on the implausibility of certain aspects of Li's asylum application and testimony, including on the topic of her efforts to leave China. Further, the IJ afforded little weight to a letter from Li's husband describing the events in question because he was unavailable for cross examination, and noted that Li failed to present any documentation to support her claims that she was forced to use an IUD and submit to periodic examinations. Moreover, the IJ remarked that Li presented no testimony as to any fear of future persecution, and that the record did not indicate that she would suffer any torture. The IJ ordered Li removed to China.

On July 12, 2012, the BIA dismissed Li's appeal. The BIA found no clear error in the IJ's adverse credibility finding, noting Li's inability to provide any specific examples of her efforts to leave China between 1996 and 2010. The BIA also referred to the IJ's

4

observations concerning Li's often hesitant or nonresponsive testimony and Li's demeanor. The BIA agreed with the IJ's decision to give limited weight to the letter written by Li's husband, given that he was an interested witness as Li's relative and was not subject to cross examination. In addition, the BIA stated that it was not persuaded by Li's argument that corroborating documentation of her mandatory examinations was unattainable. Thus noting its affirmance of the IJ's determination that Li did not provide credible testimony or corroborating evidence, the BIA concluded that Li failed to meet her burden of proof to establish eligibility for asylum or withholding of removal. As for CAT relief, the BIA stated that Li presented no meaningful arguments in support of her claim.

Li's petition for review followed. We have jurisdiction pursuant to 8 U.S.C. § 1252(a). Because the BIA appears to have relied substantially on the findings of the IJ, we have jurisdiction to review the decisions of both the BIA and the IJ. See Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004). We review the agency's factual findings, including adverse credibility findings, for substantial evidence. Lin v. Att'y Gen., 543 F.3d 114, 119 (3d Cir. 2008). Under this standard, we will uphold the agency's findings "unless any reasonable adjudicator would be compelled to conclude to the contrary." Id. (citations omitted).

Under the Real ID Act, the IJ's credibility determination may be based on the applicant's demeanor and responsiveness, the inherent plausibility of her story, the

consistency of the evidence, and other factors, without regard to whether inconsistencies and inaccuracies go to the heart of the applicant's claim. 8 U.S.C. § 1158(b)(1)(B)(iii). Moreover, corroborating evidence may be required, especially where the applicant's testimony is not credible. Cf. 8 U.S.C § 1158(b)(1)(B)(ii) (addressing requirement of evidence that corroborates "otherwise credible testimony").

Li argues that the IJ erroneously based his adverse credibility determination on the lack of speed in Li's responses, contending that the delays in responses might be explained by factors other than untruthfulness, such as a lack of education or cultural differences. However, in addition to the slowness of Li's responses, the IJ characterized Li's demeanor, especially on cross examination, as "bewildered," observing that Li had "great difficulty answering the questions," and that her responses ultimately did not help elucidate her claims. A.R. 86. We defer to the IJ's observations regarding demeanor. See Dia v. Ashcroft, 353 F.3d 228, 252 n.23 (3d Cir. 2003) (en banc). Li also contends that her statement in her asylum application that she was "always looking" for a chance to leave China after the 1996 abortion should be interpreted to include "passively waiting" for an opportunity to leave. Thus, Li argues, her inability to testify with any examples of efforts to depart does not constitute an inconsistency with her application. See Pet. Br. at 8-9. We are not persuaded by this argument. We note that the IJ discussed the issue in terms of the *implausibility* of Li's account that, for more than ten years, she "was always looking" to leave China but was unable to describe how she did

so. In sum, we conclude that substantial evidence supports the adverse credibility finding, and that the record does not compel a contrary finding.

Because substantial evidence supports the adverse credibility finding, we need not reach Li's argument that the IJ made unreasonable demands for corroborating evidence in support of her claims. It suffices to note that, although an asylum applicant may establish eligibility for relief by testimony alone, even a credible asylum applicant may be required to supply corroborating evidence in order to meet his burden of proof. See Chen v. Gonzales, 434 F.3d 212, 218 (3d Cir. 2005) (citing Abdulai v. Ashcroft, 239 F.3d 542, 554 (3d Cir. 2001)).

As for the CAT claim, the BIA noted that Li did not present any testimony or evidence before the IJ establishing her eligibility for relief, and that she made no meaningful arguments on the subject. To the extent that Li's CAT claim relies on the same evidence concerning her account of the forced abortion and mandatory IUD compliance regimen, for reasons already stated, we conclude that the record does not compel the conclusion that Li is entitled to CAT relief.

Accordingly, we will deny the petition for review.