**DLD-078** **NOT PRECEDENTIAL**

## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

———————

No. 15-2970

———————

YOUNG SU SONG,
                              Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                              Respondent

———————————————————————

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A089-237-904)
Immigration Judge:  Honorable Steven Morley

———————————————————————

Submitted on Respondent's Motion for Summary Action
Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
December 10, 2015
Before:  CHAGARES, GREENAWAY, JR. and SLOVITER, Circuit Judges

(Opinion filed:  December 31, 2015)

———————

OPINION*

———————

PER CURIAM

Young Su Song, a native and citizen of South Korea, petitions for review of an

order of the Board of Immigration Appeals ("BIA").  The Government has filed a motion

to summarily deny the petition. For the reasons that follow, we will grant the Government's motion.[1]

Song was admitted to the United States in 2004 as a visitor with authorization to stay for six months. In 2008, the Department of Homeland Security initiated removal proceedings against Song because he had remained in the United States longer than permitted. Song conceded that he is removable and filed applications for asylum, withholding of removal, and relief under the Convention Against Torture.

In support of his applications, Song testified that he borrowed $120,000.00 from a colonel in the South Korean military in order to open a restaurant in the United States. Song stated that he did not remember the colonel's name and that his brother had arranged the loan. Song testified that he was unable to make any payments on the loan, and that in November 2011, a man wearing a Korean military uniform took his brother and beat him. Song stated that in December 2011, loan sharks threatened to burn down his brother's house and to kill him if the loan was not repaid. Song's brother went into hiding. Song testified that his sister was also threatened and that he fears he will be killed if he returns to South Korea.

The Immigration Judge ("IJ") found Song's testimony not credible as to the circumstances of the loan. The IJ explained that Song testified that he had signed the

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.
[1]Although we have entertained the Government's motion, the motion should have been filed before Song filed his brief. See 3d Cir. L.A.R. 27.4(b).

loan documents before leaving Korea, but in his asylum application he stated that his brother loaned him money and that he only learned in 2011 that his brother received the money from his company partner. The IJ noted that Song's siblings both stated in their statements that "we" borrowed money and identified the colonel as the lender. The IJ stated that Song did not recall the colonel's name and could not adequately explain why his asylum application stated that his brother's business associate lent him the money. The IJ also explained that Song testified that the loan was due in October 2009, but his siblings stated that the loan was due on September 30, 2011. The IJ stated that it was not until Song was asked why the loan sharks waited until 2011 to confront his siblings, that Song claimed that his brother had extended the deadline until September 30, 2011.

The IJ also found Song's testimony not credible as to the alleged threats and violence against his siblings. The IJ noted, among other things, that Song did not mention his sister in his asylum application and that he could not provide a cogent description of her role in the loan. The IJ questioned Song's testimony that he did not warn other family members of potential harm, finding this unreasonable if he and his siblings credibly feared the loan sharks' threats. Based on the adverse credibility finding and a lack of corroborative evidence, the IJ ruled that Song failed to meet his burden of proof.[2]

---

[2]The IJ also ruled that, even if credible, Song did not establish past persecution or a well-founded fear of persecution on account of a protected ground, or that it is more likely than not that he would be tortured. These findings are not at issue.

On appeal to the BIA, Song asserted that the IJ's credibility determination was inherently flawed because the court interpreter was not translating verbatim. Song argued that the IJ denied his request for a side bar on this issue and refused to hear evidence from the witness in the courtroom who heard the interpreter summarizing some of the testimony. Song asserted that the IJ failed to adequately inquire into the problem by only asking the interpreter whether he gave a word-for-word translation.

The BIA dismissed Song's appeal. The BIA ruled that the IJ's adverse credibility finding is not clearly erroneous based on the inconsistencies in the evidence regarding the loan. The BIA rejected Song's argument that the finding is flawed because the testimony was incorrectly translated. The BIA explained that Song had not presented evidence corroborating his claim that the person in the courtroom was an interpreter with sufficient knowledge of the Korean language and English to detect material flaws in the interpretation of the testimony. The BIA also stated that Song did not specify what, if any, testimony was translated incorrectly. Finally, the BIA explained that the interpreter issues did not explain the inconsistences between Song's asylum application and the letters from his brother and sister. This petition for review followed.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a). We review the agency's adverse credibility finding for substantial evidence. Lin v. Att'y Gen., 543 F.3d 114, 119 (3d Cir. 2008).

Song reiterates in his brief his argument to the BIA that the adverse credibility finding is flawed based on problems with the translation. He asserts that the finding

4

constitutes a violation of due process. Song contends that the IJ should have allowed the person in the courtroom to give examples of the problems and that his counsel should have been given an opportunity to question the court reporter. The Government, however, contends that Song has made only a bald-faced allegation of error that is insufficient to establish a colorable due process claim. The Government also argues that Song fails to address the reasons that the BIA rejected his claim.

We agree with the Government that Song has not shown that the BIA erred in rejecting his challenge to the IJ's adverse credibility determination. The administrative record reflects that Song provided no information about the person who disputed the certified court reporter's translation and that he did not specify before the IJ or on appeal any testimony that was translated incorrectly. Absent the identification of any such testimony, Song has not cast doubt on the adverse credibility finding. As recognized by the BIA, that finding is supported not only by Song's testimony, but also by inconsistencies in the documentary evidence.

The record also does not support Song's assertions that he was precluded from raising the alleged problem before the IJ. When Song was having difficulty responding to the IJ's questions, the individual in the courtroom explained to the IJ that part of his question was not translated. See Administrative Record ("A.R.") at 212-14. At the close of testimony, counsel told the IJ that the interpreter was summarizing some of the testimony and that might explain why there were some misunderstandings. The IJ asked the court reporter whether he summarized the testimony and the court reporter stated that

5

he gave a word-for-word translation. The IJ told counsel that the interpreter was certified, that they had clarified the earlier testimony, and that he did not think the issue in any way impacted his view of the testimony. Although the IJ did not allow the individual who disputed the translation to address the court, the IJ allowed the individual to tell counsel the problem, who could then tell the court. See A.R. at 219-22. Song has not shown a violation of his due process rights.

Song also argues in his brief that the IJ erred by rejecting certain evidence he sought to present as untimely. The Government correctly contends that we lack jurisdiction over this issue because Song did not exhaust his administrative remedies and raise this issue on appeal to the BIA. See Lin, 543 F.3d at 120-21. Finally, to the extent Song contends that a remand is warranted to address whether he qualifies as a member of a particular social group for purposes of asylum under intervening law, the BIA did not address this contention and it is unnecessary to reach it in light of the BIA's decision upholding the adverse credibility determination.

Accordingly, we will summarily deny the petition for review.